The Southern White-Lead Co. et al. v. Haas et al.

The Southern White-Lead Co. et al. v. Haas et al.

1. **Fraudulent Conveyance:** WHAT IS NOT: MORTGAGES GIVING PREFERENCES. The rule is well settled in this state that a debtor in failing circumstances may mortgage the whole of his property for the security of a portion of his creditors, even though the effect of the transaction is to defeat the collection of his unsecured debts. (See opinion for cases so holding.)

2. **Partnership:** TIME OF BEGINNING: FAILURE OF NEW PARTNER TO PAY IN CAPITAL: CONDITION PRECEDENT. Where J. and H. were partners, and they took R. into the business, forming a new partnership, which, by the terms of the agreement was to begin forthwith, but under the old name, and the agreement also provided that R. should put into the business $20,000 in goods and merchandise which he "shall first have purchased of the old firm," paying therefor to the members of the old firm $10,000 in cash, and giving his note for a like sum; and he paid only a portion of that amount, and never gave the note, but the business was otherwise conducted as contemplated by the articles; *held* that the payment in full by R., and the execution of the note by him, were not conditions precedent to the beginning of the partnership, but that it began at once.

3. ——: PRESUMPTION OF CONTINUANCE: EVIDENCE TO OVERCOME. In such case, where the partnership was to continue for five years, and there was no apparent change in the business, *held* that third parties who claimed that before that time there was a dissolution or a rescission, on account of R.'s failure to pay as agreed, had the burden to prove their claim, and that the evidence offered for that purpose (see opinion) was not sufficient.

4. ——: DISSOLUTION: EVIDENCE: ADMISSION OF PARTNER TO STRANGER. The admission by a partner to a stranger, that the partnership was dissolved at a certain time, is not admissible as against creditors whose claims depend on the continuance of it, and is admissible only as going to the credibility of the testimony of the partner, as a witness, that it was not dissolved.

5. **Evidence:** DEPOSITIONS: USE OF IN OTHER CASE. A deposition of a partner taken in an action against him by another partner, brought to secure a settlement of the partnership affairs, is not admissible in an action by creditors of the partnership, brought against the firm and other creditors, to set aside mortgages made by the firm to such other creditors, and to subject the proceeds of the mortgaged property to the payment of their claims; for the reason that the parties to the last action are not the same as to the first, nor privies to them.

6. **Partnership:** CHANGE OF: NEW MEMBER: MARSHALING ASSETS. A partnership was changed by taking in a new member, but the firm

The Southern White-Lead Co. et al. v. Haas et al.

name remained the same. After this the original partners mortgaged the stock in the firm name to secure certain notes executed in the firm name, but some of them dated before, and some of them after, the change of the firm. After this other creditors, whose claims bore date after the change of the firm, came in and claimed the proceeds of the stock to satisfy their demands. *Held,* in the absence of satisfacto y evidence to the contrary, that it should be presumed that the notes dated subsequent to the change of the firm were given for debts of the new firm, and that the proceeds should be applied, first, to the payment of such notes, and the residue to the satisfaction of the intervening creditors, in the order of their garnishments.

7. ———: POWER OF PART OF MEMBERS TO MORTGAGE STOCK. Two of three members of a firm have authority to mortgage the partnership stock for the security of the debts of the firm.

*Appeal from Dubuque District Court.*

MONDAY, JUNE 27, 1887.

PLAINTIFFS are judgment creditors of Junkerman & Haas. They brought this action to cancel and set aside three chattel mortgages executed in the name of that firm to defendant Peter Keine, and covering all the personal property belonging to the firm. The district court dismissed the petition. Plaintiffs appeal.

*Henderson, Hurd & Daniels, George W. Kiesel, Longueville & Linehan, Graham & Cady, Powers & Lacy* and *Utt Bros.,* for appellants.

*Fouke & Lyon* and *McCeney & O'Donnell,* for appellee.

REED, J.—For many years prior to the 2d of October, 1882, Otto Junkerman and Julius W. Haas were engaged in business as partners under the firm name of Junkerman & Haas. On that date they signed articles of copartnership with F. Raforth, Jr. As it is a question in the case whether a partnership with Raforth as a member was ever in fact constituted, it is material to set out some of the provisions of said articles. They are as follows:

"These articles of copartnership, made and entered into this 2d day of October, 1882, by and between Otto Junker-

man, Julius W. Haas and F. Raforth, Jr., all of the city and county of Dubuque, state of Iowa, witnesseth:

" (1) That the said parties hereto, in consideration of the terms and covenants hereinafter mentioned, and for the purpose of carrying on and continuing the wholesale and retail drug business prior to the date of these presents, in said city of Dubuque, prosecuted and carried on conjointly by the said Otto Junkerman and Julius W. Haas, do hereby form enter into, and constitute themselves, a copartnership under the firm name and style of Junkerman & Haas, being the name and style of the predecessors of the copartnership herein formed.

" (2) The said copartnership is to be and continue for the full term of five years from and after the date of these presents.

" (3) The capital stock or permanent business fund of this copartnership is to be sixty thousand dollars, furnished in equal shares by the said parties hereto, and is to consist of drugs, goods, wares and merchandise, stock in trade, fixtures, etc., purchased by this copartnership of the old firm of Junkerman & Haas at prices as per present inventory of stock of said old firm; that is to say, the said Otto Junkerman and Julius W. Hass are each to place into the business of this copartnership the sum of twenty thousand dollars in goods, wares, and merchandise and fixtures of the old firm of Junkerman & Haas, and the said F. Raforth, Jr., is likewise to place in the business of this copartnership the said sum of twenty thousands dollars in goods, wares, merchandise, fixtures, etc., which he shall first have purchased of the old firm of Junkerman & Haas, paying therefor to the members of said firm the sum of ten thousand dollars cash, and giving them his promissory note for ten thousand dollars, payable on or before five years after the date of these presents, and bearing interest at the rate of seven per cent per annum, said interest being due and payable on the 1st day of January, 1884, and

on the 1st day of January of each year thereafter until paid; the said inventory already taken of the stock in trade, etc., of said old firm of Junkerman & Haas, in all cases forming the basis of computation.

" (4) The said capital stock or common business fund of said copartnership may be increased, but shall not be diminished, during the continuance of the copartnership.

"(5)　　*　　*　　*　　*　　*　　*　　*　　*　　*

" (6) This copartnership assumes none of the liabilities of the old firm; neither shall it have any claim or interest in and to the assets of the old firm of whatsoever name, nature or description. It is understood, however, that all the members of this copartnership shall lend their labor, time and counsel to the liquidation of the liabilities of the old firm, as well as to the disposition of and realization from assets of the old firm.

" (7) If, at the time of the commencement of this copartnership, the stock of goods, etc., of the old firm of Junkerman & Haas should inventory for more than sixty thousand dollars, (the amount of the capital stock of the new firm,) then such excess over sixty thousand dollars shall be received and retained by this copartnership, giving to Otto Junkerman and Julius W. Haas credit on the books of this copartnership therefor; the amount of such credit to them, respectively, being payable as by the parties hereto hereafter determined.　*　　*　　*"

Raforth paid $7,300, of the amount which he agreed to pay, in cash, soon after the articles were signed. He did not, however, give the promissory note provided for in the articles, and he has never paid the balance of the cash payment. It does not appear that demand was ever made for the note, although he was requested by the other parties to pay the balance of the money due. The parties entered upon business as provided in the articles; Raforth giving his attention to the business, and being recognized and treated as a partner by the others. The old firm was largely indebted when

the arrangement was made, and on the 26th of September, 1883, being pressed by some of the creditors, Junkerman & Haas executed the three mortgages in question, covering all the personal property of the firm. The first mortgage was to defendant Peter Keine, and was given to secure sixteen promissory notes held by him against the firm, eleven of which bore date before, and the others after, October 2, 1882, and to indemnify him against liability as guarantor of a note held against them by a third party, which bore date before that time; also against liability as guarantor of an account against the firm, the date of which is not shown. The total amount of indebtedness secured by that mortgage was $10,696, of which amount $5,196 clearly appears to have been incurred before October 2, 1882. The second mortgage, which covers the same property, was also given to Keine, and was for the security of thirty-three notes given by the firm to various persons for money borrowed through Keine. The aggregate amount of the notes is $16,940, and they all bear date before October 2, 1882, except seven, the aggregate amount of which is $3,140. That mortgage, by its terms, is subject to the one given for Keine's personal security. The third mortgage, which also covers the same property, was also given to Keine, and was given for the security of thirty-eight notes held by various persons against the firm, aggregating in amount $28,986.50. Twenty-six of those notes bear date before October 2, 1882. The others aggregate $7,766, and bear date after that. The mortgage, by its terms, is subject to the two preceding ones. The plaintiffs each obtained a judgment against the firm of Junkerman & Haas. The debts evidenced by these judgments were all incurred after October 2, 1882. They garnished Keine and his attorney or agent while the money derived from the sale of the mortgaged property was in their hands, and afterwards instituted this suit (which is an equitable action) to cancel the mortgages, and subject the money derived from the sale of the property to the payment of their judgment,

on the grounds (1) that the transaction was, in effect, a general assignment for the benefit of creditors, and·is void under the statute because not made for the benefit.of all the creditors in proportion to the amount of their claims; and (2) that the mortgages, being executed by but two members of the firm, without the knowledge or consent of the other partner, (which is the fact. if Raforth was a partner when they were. given,) and being given to secure debts for which the partnership owning the property was not liable, are void, and created no lien upon the property.

I.　The first ground of objection has not been much insisted upon in this court. With reference to it, we

1. FRAUDU-
LENT convey-
ance: what is
not: mort-
gages giving
preferences.

deem it sufficient to say that the evidence shows very clearly that· the mortgages were intended as securities for the several debts enumerated in them, and they were given on the demand of the creditors for security.　The rule is now well settled in this state that a debtor in failing circumstances may mortgage the whole of his property for the security of a portion of his creditors, even though the effect of the transaction is to defeat the collection of his unsecured debts. (*Perry v. Vezina*, 63 Iowa, 25; *Farwell v. Jones*, Id., 316; *Cadwell's Bank v. Crittenden*, 66 Id., 237; *Gage v. Parry*, 69 Id., 605; *Aulman v. Aulman*, 71 Id., 124.)

II.　The case turns on the question whether Raforth was a member of the firm when the mortgages were executed.

2. PARTNER-
SHIP: time of
beginning :
failure of
new partner
to pay in cap-
ital : condi-
tion prece-
dent.

If he was a partner at that time, his partners had no power to pledge the partnership property for the security of the debts of the old firm, and for which they alone were responsible.　This is not denied by counsel, but the effort has been to establish that he was not in fact a partner at that time.　It was contended, in argument, that the provisions of the articles by which he covenanted to purchase and put into the business $20,000 worth of the goods and merchandise of·the old firm, and to pay therefor $10,000 in cash, and give his

note for the balance, is in the nature of a condition prece-
dent; and, as he failed to perform the condition, the partner-
ship was never in fact constituted. But this position cannot
be maintained. It is clear, we think, from the language of
the first division of the articles, that it was the intention of
the parties that the partnership should begin at once. The
language is "that the parties, in consideration of the terms
and covenants hereinafter mentioned, *    *    * do
hereby form, enter into, and constitute themselves, a copart-
nership. *    *    *" The terms and covenants which
constituted the consideration are mentioned in the other par-
agraphs of the writing, and many of them, from the very
nature of the case, were to be performed in the future.

In the sixth paragraph it is provided that each copartner
should lend his labor, time, and counsel to the liquidation of
the liabilities of the old firm, as well as to the disposition of and
realization from its assets. This covenant constituted part of
the consideration, as certainly as the undertaking of each part-
ner to put into the business the specified amount of property;
but it is one which could only be performed in the future. The
language by which the partnership was constituted, however,
was in the present tense. It clearly indicates an intention
to constitute the firm from the time of signing the writing,
and this intention is clearly manifested by the second para-
graph, which provides that the partnership shall continue
for five years from and after the signing of the articles.

We do not overlook the condition of the third paragraph,
which provides that Raforth shall put into the business
$20,000 in goods and merchandise which he *shall first have
purchased* of the old firm, paying therefor, to the members
of said firm, the sum of $10,000 in cash, and giving his note
for a like amount. This provision, however, does not control
the question as to the time when the partnership should
begin. By it Raforth was bound to put into the business
$20,000 worth of goods, which he was to purchase of the
old firm; and for which he was to pay the members of that

firm.    The goods were in fact purchased and put into the business.

We have the right to assume this; for, as stated above, the parties at once entered upon the business the prosecution of which they had in view when they signed the articles. They took possession of the stock of merchandise formerly owned by the old firm, and continued to make sales from it, and additions to it. Raforth engaged in the business, assisting in the control and management of it, and being recognized and treated by the other parties as a partner in it. That he was bound to pay the members of the firm the stipulated price for the goods cannot be questioned. But very clearly, we think, such payment was not a condition precedent to the constitution of the firm.

III.    It is next claimed that there was a dissolution of the partnership, or rather a rescission of the contract of partner-

3. ——: pre- ship, because of the failure and refusal of
sumption of
continuance : Raforth to pay the balance of the cash payment
evidence to
overcome. stipulated to be paid for the goods.    The burden of establishing this claim is on the defendants; for as by the articles the term of existence of the partnership is fixed at five years, the presumption is that it continued at the time of the execution of the mortgages, and those who claim the contrary must establish their claim.    There is some evidence tending to establish it, but we think it is not sufficient to establish it.    The evidence introduced by defendants which can be considered in determining the question is that of Haas and the widow of Otto Junkerman—he having died before the institution of this suit—and of Frank Junkerman, his son.    Haas testified that, in a conversation between him and Raforth, it was agreed that the partnership should be terminated, and that Raforth should be paid wages for his services in the business, and that he should be paid interest on the money he had put into it until such time as it could be paid out of the business; and, to some extent, he is corroborated by Frank Junkerman.    Mrs. Junkerman also testi-

fied to a conversation between Raforth and her husband, in which she claimed the same agreement was arrived at. Her testimony, however, is meager, and of the most unsatisfactory character, consisting rather of a statement of her own conclusion from the conversation of the parties than of their language or statements. Raforth testified positively that no such agreement was ever entered into; and in addition to this is the fact that he continued in the business after the time of the alleged agreement, and up to the failure, which occurred immediately after the execution of the mortgages, and exercised the same authority and control in its management that he had done before; and the further fact that no credits were given him upon the books of the establishment, either for his services, or the money he had paid in, or the interest thereon. Very clearly, we think, this does not overcome the presumption of the continuance of the partnership during the period fixed in the articles, or establish the fact of a dissolution or rescission of the contract.

IV.  Certain statements or admissions by Raforth to other parties, to the effect that the partnership had been terminated, were proven. But these admissions are not evidence of the fact as against these plaintiffs. They are admissible only for the purpose of affecting the weight or credit which should be given to his testimony. If he had not been examined as a witness, they would not have been admissible at all, and they have been considered only for the one purpose.

4. ——: dissolution: evidence: admission of partner to stranger.

V.  Before the death of Otto Junkerman, Raforth instituted a suit against him and Haas for the purpose of settling the business and affairs of the partnership. Junkerman's deposition was taken in that action, and his testimony tended to prove that the partnership had been terminated in December, 1882. Defendants offered that deposition in evidence on the trial of this action, and it is contained in the abstract. Plaintiffs, however, objected to its introduction. The rule, independently of

5. EVIDENCE: depositions: use of in other case.

statute, is that " depositions taken in another action between the same parties or their privies in estate may be read on the hearing." (3 Greenl. Ev., § 326.) There is no statutory provision in this state under which the deposition in question is admissible in this action; and, very clearly, it is not admissible under the rule quoted. Plaintiffs are seeking to subject the property in question to the satisfaction of their judgments, upon the theory that Raforth was a member of the partnership at the time the mortgages were executed. But there was no privity of estate between him and them. They have no interest or estate in the property, nor do they seek to recover any; but their object is to appropriate it, as the property of their debtor, to the satisfaction of their debts. The deposition, therefore, cannot be considered.

. Under the conclusion we have reached, the money in the hands of Keine and his agent should first be applied to the

6. PARTNER-SHIP : change of: new member : marshaling assets.

satisfaction of the notes mentioned in the mortgages which bear date after the 20th of October, 1882. There being no satisfactory evidence that those notes were given for debts of the old firm, the presumption is that they evidence indebtedness of the new. The account of $350 guaranteed by Kiene will be included in this class, for it is not shown that it is a debt of the old firm, the burden on that question being on plaintiffs. Junkerman and Haas had the power, as members of the firm, and had author-

7. ——: power of part of members to mortgage stock.

ity, to mortgage the property of the partnership for the security of those debts; the presumption being that they are the debts of the new firm. The residue of the money, or so much as necessary, will be applied to the satisfaction of plaintiffs' judgments in the order of the garnishments. The judgment will be modified accordingly. REVERSED.

SUPPLEMENTAL OPINION.

TUESDAY, DECEMBER 13.

BY THE COURT.—Counsel for the appellee, in a petition for a rehearing, with much force and vigor contend that the

former opinion is erroneous as to the main point determined. We have looked into the record again, and feel constrained to say that we think the decision is right, and must be adhered to.

Our attention is called to the fact that we failed to say in words that our ruling did not affect certain persons who were made defendants, but not served with notice, and did not appear. We supposed counsel would concede it could not have such effect.

It is also deemed proper to say, to the end that our ruling may not be misunderstood, that the mortgage identified in the record as Exhibit A has priority over the attachment liens and judgment of the plaintiffs, except as to the indebtedness therein named, as being due William Stoleben, which we find is not a partnership debt. Subject to what we have herein said, the former opinion is adhered to.