Rollins v. The Shaver Wagon & Carriage Co.

ROLLINS V. THE SHAVER WAGON AND CARRIAGE COMPANY *et al.*

1. **Corporations:** ATTACHMENT OF CORPORATE PROPERTY BY OFFICER OF CORPORATION. An officer of a corporation, who is also its creditor, may attach its property for the collection of his debt, though he knows of its failing circumstances, but is in no way responsible therefor, and though he knows that his attachment will precipitate a crisis in its affairs; and his attachment will be good as against subsequent attaching creditors and mortgagees. (See opinion for cases followed in principle.)

2. ———: INSOLVENCY: TRUST DEED: PREFERRING CREDITORS. A trust deed made by an insolvent corporation, and conveying nearly all its property, is not void on the ground that it is given to secure only a portion of its creditors. (See *Southern White Lead Co. v. Haas*, 73 Iowa, 404.)

3. **The Same:** FRAUDULENT COMBINATION. Such deed was not void as being the result of a fraudulent combination, simply because the final decision of the directors as to what creditors should be secured thereby was the result of a compromise.

4. ———: UNJUST CLAIMS INCLUDED. Nor was such deed void simply because some of the claims attempted to be secured thereby may have been unjust; other secured claims being unquestioned. (See citations in opinion.)

5. ———: AUTHORITY TO EXECUTE DEED. Where the resolution authorizing the execution of the deed was passed at a meeting of the directors, at which four out of five were shown by the minutes to be present, and the minutes showed that two of them voted for the resolution, and that one of them voted against it, and that it was adopted, but the president, whose vote was not shown by the minutes, signed and approved them, *held* that the president will be presumed to have voted for it, and that it must be regarded as duly adopted.

Rollins v. The Shaver Wagon & Carriage Co.

6. ———: COMPLAINT OF FRAUD BY SUBSEQUENT CREDITORS. Where in such case the notes held by one of the secured creditors were given for value, the other creditors could not demand that the amount thereof should be reduced by a set-off on account of a transaction which took place before they became creditors, and which they claimed was in fraud of the corporation,—it appearing that the corporation could not have asserted any claim against her on account thereof when the trust deed was made.

7. Corporations: POWERS: SURRENDER OF STOCK. When not prohibited by its articles of incorporation, a corporation with the usual powers may contract for the surrender of its own stock. (See opinion for citations.)

8. ———: PREFERRING CREDITORS: RELATIVES OF DIRECTORS. A trust deed made by a corporation to secure preferred creditors cannot be assailed, as to one of the creditors secured, on the ground that one of the directors who voted for it was her husband, and another her brother, and that without their votes it could not have been made, since a director may even vote for his own preference. (See cases cited in opinion.)

*Appeal from Polk District Court.* — HON. JOSIAH GIVEN, Judge.

FILED, MAY 31, 1890.

ACTION in equity to foreclose a trust deed. The material facts are stated in the opinion.

*Wishard & Baily,* for appellants M. W. Bibbins, C. L. Pritchard, Coombs & Co., Davis, Reyburn & Co. and T. T. Haydock Carriage Company.

*Mitchell & Dudley* and *Bousquet & Earle,* for appellant the Western Mining and Investment Company.

*Phillips & Harvison,* for appellee Henry M. Rollins, trustee.

*E. J. Goode,* for appellee the Valley National Bank.

*Cummins & Wright,* for appellees Kelley, Maus & Co., Tuthill Spring Company and George Pattee.

ROBINSON, J.—The Shaver Wagon and Carriage Company is a corporation duly organized, which commenced its corporate existence on the ninth day of February, 1886. The articles of incorporation provide that it shall have the following powers, viz.: "To make contracts; to acquire by deed, lease, assignment or otherwise any property, both real and personal, and to transfer the same at its pleasure; to mortgage or incumber any of its property; to sue and be sued by its corporate name, and in like manner do all other acts and exercise all other powers necessary to be done or performed in and about the conducting or carrying on the business for which such incorporation was organized as fully, in every respect, as private individuals might or could do under the laws of the state." The business of the company was managed by a board of five directors, a majority of whom constituted a quorum. On the twelfth day of February, 1886, a certificate for one hundred shares of stock, of one hundred dollars each, was issued to J. T. James. The stock so issued was paid for by the transfer to the wagon and carriage company of bonds of the American Coal Company to the amount of ten thousand dollars. On the fifteenth day of the same month the certificate of stock issued to J. T. James was canceled, and in lieu thereof one for the same number of shares was issued to his wife, O. M. James. On the twenty-fourth day of January, 1887, the board of directors of the wagon and carriage company accepted a proposition of Mrs. James to transfer to her the bonds of the coal company in exchange for the stock issued to her as aforesaid, and the exchange was effected accordingly. In August, 1888, defendant Bibbins became a stockholder of the wagon and carriage company, loaned it three thousand dollars in money, and entered its service as an employe. In the next month he became a member of its board of directors. In October, 1888, the company was financially embarrassed; and, to recover the money he had loaned it, and which was then due, Bibbins, on the sixteenth day of

that month, commenced an action against the company, aided by attachment. During the following night the trust deed in suit was executed to secure debts owing to the Valley National Bank of Des Moines, O. M. James, Kelley, Maus & Co., Tuthill Spring Company, J. W. Mills, W. T. Shaver and George Pattee. It conveyed nearly all the property of the wagon and carriage company. On the next day several creditors commenced actions against the company, which were aided by attachments. The writs were levied upon certain real estate of the company situate in Des Moines. On the twenty-third day of October, 1888, the plaintiff, as trustee, commenced this action to foreclose the deed of trust, and made parties defendant the wagon and carriage company and the attaching creditors. O. M. James assigned the notes made to her, and secured by the trust deed, to the Western Mining and Investment Company, and gave notice thereof on the seventh day of November, 1888. On the eleventh of January, 1889, J. W. Mills filed notice of the assignment of the notes made to him, and secured by the trust deed, to the Des Moines Savings Bank. The assignees of Mrs. James and of Mills, and the other creditors who were secured by the trust deed, excepting the Valley National Bank, appeared in the action and filed petitions of intervention. Haydock Bros. also intervened, claiming an interest in the real estate conveyed by the trust deed by virtue of a judgment, a transcript of which was filed in the office of the clerk of the district court of Polk county on the twenty-ninth day of October, 1888. John H. Queal & Co. were creditors of the wagon and carriage company, and had commenced their action, aided by attachment, and caused their writ to be served on the sixteenth day of October, 1888. The trust deed specially provides that the claims of the Valley National Bank shall be preferred and paid in full before payment shall be made on the other claims secured by the trust deed. The petition demands the foreclosure of the trust deed, and asks the appointment of the plaintiff as receiver, with

power to continue the business of the wagon and carriage company so far as it may be necessary and practicable to complete and dispose of the goods in the process of manufacture. From the subsequent pleadings and the decree, we infer that the appointment was made as asked.

The district court, after a trial on the merits, found and decreed as follows: *First.* That the attachment of defendant Bolton for rent was paramount to the claim of the other parties to the action, and it was established as a first lien upon the property in controversy. *Second.* That the lien of John H. Queal & Co. was senior to the rights of the creditors secured by the trust deed. *Third.* That the Valley National Bank was a preferred creditor under the trust deed, and entitled to have its claim paid from the trust property before payment therefrom to other creditors secured by the deed. *Fourth.* That Kelley, Maus & Co., Tuthill Spring Company, Des Moines Savings Bank, as assignee of Mills, and George Pattee were entitled to have their claims paid by the receiver after the claims of Bolton, Queal & Co. and the Valley National Bank were satisfied. The amount to which each one was entitled under the trust deed was ascertained and fixed. *Fifth.* That J. D. Seeberger, Chicago Varnish Company, C. L. Pritchard, Davis, Reyburn & Co., Coombs & Co., Thomas McFarland, T. T. Haydock Carriage Company and Haydock Bros. were entitled to the payment of their claims, as attaching and judgment creditors, after the payment of the creditors previously specified, and that, in case any sum remained in the hands of the receiver, after paying all of such creditors, the sum found to be due Bibbins in a suit at law then pending should be paid him. *Sixth.* That the attachment of Bibbins was invalid as against the creditors of the company, and created no lien upon its property. *Seventh.* That the trust deed was invalid as to O. M. James and her assignee, the Western Mining and Investment Company, and as to W. T. Shaver; and they were denied relief thereunder.

The defendants Bibbins, Pritchard, Coombs & Co., Davis, Reyburn & Co., and T. T. Haydock Carriage Company, and the intervenor, the Western Mining and Investment Company, appeal.

I. Intervenors the Des Moines Savings Bank, Pattee, Shaver, Kelley, Maus & Co., Tuthill Spring Company and Western Mining and Invest-

1. CORPORA-
TIONS: attach-
ment of cor-
porate prop-
erty by officer
of corpora-
tion.
ment Company separately attack the attachment of Bibbins in their petition, in language substantially as follows: "The intervenor is informed and believes, and further alleges, that the writ of attachment issued from the district court of Polk county in the suit in which M. W. Bibbins is plaintiff, and the Shaver Wagon and Carriage Company is defendant, and levied upon a portion of the property described in and conveyed by said trust deed, was wrongfully and maliciously sued out, and that the damages resulting therefrom should be distributed among the creditors holding valid claims under said mortgage or deed of trust; and this intervenor denies that any attaching creditor, party hereto, has any lien upon the said property paramount or prior to the lien of said mortgage or deed of trust." The grounds upon which the writ in favor of Bibbins was issued are not shown, and whether they were true does not appear. The action of the court in denying the validity of the attachment was undoubtedly based upon the theory that, under the facts of this case, Bibbins could not assert his claim to the prejudice of the other creditors of the company. The decree provides that it is to be without prejudice to the right of Bibbins to recover a judgment against the company for whatever sum may be due him in the suit then pending at law, and that it is to be without prejudice to the right of the company to recover for the alleged wrongful and malicious suing out of the writ. The question of the rightful suing out of the writ was not adjudicated, excepting as it affected creditors. We are, therefore, led to inquire whether there was anything in the relations of Bibbins

to the company to make his attachment invalid. That
his claim was for money loaned to the company in good
faith, and that it had been due several weeks when his
action was commenced, is not disputed. He knew that
the company was embarrassed financially; that there
were claims against it due and unpaid; that debts in
large amounts were about to become due, and that the
company had no money with which to pay them; that
several of the directors were insisting that claims held
by certain of their friends should be paid; that one of
the directors had taken a portion of the assets of the
company without authority by the board, and had
delivered it to a creditor of the company. There was a
want of harmony among the officers of the company,
and the outlook was unfavorable. It is true Bibbins
was an officer of the company; but he had been such
officer but a few weeks, and was not responsible for the
condition of the company. He was induced to become
a stockholder, and to loan the money in controversy,
under a misapprehension of the condition of the com-
pany. It is also true that he had reason to believe that
his action in commencing suit would precipitate a crisis
in the affairs of the company, and that there were
negotiations pending, which might result in the sale of
stock to the amount of ten thousand dollars, which
might be consummated if no action was taken by credi-
tors to prevent. But the result of the negotiations was
uncertain, and we do not think that Bibbins was under
obligations to await their termination, under the cir-
cumstances of the case. It was held in *Warfield v.
Canning Co.*, 72 Iowa, 667, that a corporation may pre-
fer its own stockholders and directors to other credi-
tors, and that a mortgage given to secure an officer and
stockholder was valid, even though it was authorized
by his own vote. In *Garrett v. Plow Co.*, 70 Iowa, 702,
it was said that "no reason can be given why a director
who holds a valid debt against his corporation may not,
though it be insolvent, in a fair and honest way, take
its property in security." Numerous authorities are

Rollins v. The Shaver Wagon & Carriage Co.

cited in the cases referred to in support of the conclusions announced. The right of a creditor to take property by means of an action aided by attachment is recognized by law to be both fair and honest when a statutory ground for suing out the writ exists. Bibbins acted in good faith, and in a reasonable effort to protect his own interests. Had he taken a mortgage to secure his claim, its validity could not have been questioned, although the result to the business of the company would probably have been the same as that which followed the attachment. The record discloses nothing which shows that the levy of the writ was invalid; and, since it was made before the trust deed was executed, we think it created a lien paramount to the interests which that conveyed, and paramount to those acquired by subsequent attachments and judgments. The conclusion we reach makes it unnecessary to determine whether the creditors could in any event successfully attack an attachment by the means adopted in this case.

II. The trust deed is assailed on several grounds. It is said that it was, in effect, a general assignment with preferences, and, therefore, that it is void. It is well settled that an insolvent debtor may lawfully mortgage all his property for the security of a portion of his debts, even though nothing is left for the payment of those unsecured. *Southern White Lead Co. v. Haas*, 73 Iowa, 404, and cases therein cited.

2. ——: insolvency: trust deed: preferring creditors.

It is said that it was executed pursuant to a fraudulent agreement and combination. The evidence does not support this claim. Different members of the board of directors favored securing different creditors, and the trust deed as executed was to some extent a compromise. But it was not designed to accomplish any illegal purpose, although it was intended to prefer the creditors therein named to others. The directors who authorized it were not working together harmoniously, and the only

3. THE same: fraudulent combination.

combination made was that concessions were made in order to secure the execution of the trust deed.

It is said it was an attempt to incumber the property of the company with unjust claims. Some of the claims secured by the trust deed are unquestioned. If others were fraudulent, that fact would not necessarily invalidate the trust deed. *Prince v. Shephard*, 9 Pick. 177; *Smith v. Post*, 3 Thomp. & C. 650; Bump, Fraud. Conv. 488.

4. ——: unjust claims included.

It is said the deed was executed without authority. It was executed by virtue of a resolution of the board of directors of defendant. The minutes of the meeting at which the resolution was adopted show that four of the five members of the board were in attendance, with "J. T. James in the chair." The resolution was introduced by H. D. Reeves, and seconded by W. T. Shaver. The record of its adoption is as follows: "Yeas, Reeves and Shaver; nays, Andersen. Motion was carried." The minutes were signed and approved by J. T. James as president. It is said that, in order to bind the corporation, it was necessary that a majority of the directors present should vote for the adoption of the resolution. The minutes do not show that the president of the board was present when the vote was taken; but, conceding that he was and that three affirmative votes were necessary to adopt the resolution, we think the record justifies the conclusion that they were in fact given, although not formally recorded. If the president was present, he no doubt announced the result of the vote; and, if his vote was necessary to authorize the announcement he made, it will be presumed to have been given. The record does not show that it was not so given, while the approval of the minutes by the president is strong corroboration of the statement of the minutes that the motion was carried. It is not a case where the law requires the votes to be separately recorded before action thereon can be taken. The evidence shows that the trust deed was duly accepted by the various creditors

5. ——: authority to execute deed.

who were named as beneficiaries, and we think it should be held to be a legal and valid instrument.

III.    When the trust deed was executed, the wagon and carriage company owed to Mrs. James eighty-five hundred dollars, besides interest on seven promissory notes, and the trust deed provided for their payment.    We do not understand that the genuineness of these notes, and that they were unpaid, is seriously questioned, by any one.    There is nothing in the record to justify the conclusion that they were not given in good faith, and for a valid indebtedness, excepting as they are affected by an alleged set-off or counter-claim, which we will now proceed to consider.    It is said that the surrender by Mrs. James of her stock in the wagon and carriage company to the amount of ten thousand dollars, in exchange for the bonds of the American Coal Company, was fraudulent, and without authority on the part of the wagon and carriage company.    The stock held by Mrs. James was originally issued to her husband for the bonds of the coal company in question.    The bonds were used by the wagon and carriage company for some time as collateral security for the procurement of loans.    In January, 1887, they were held by the Valley National Bank as collateral security; but for some reason it had become distrustful of the bonds, and, not deeming them sufficient to secure a three-thousand-dollar loan, demanded other security.    Mrs. James then made the proposition already referred to, which was accepted.    In addition to surrendering her stock, Mrs. James advanced the company an amount of money to pay the debt, to secure which the bonds were held by the bank.    In the light of subsequent developments, it is clear that Mrs. James profited most by the exchange; but at the time it was made the bonds of the coal company were of uncertain value, and the approaching failure of the wagon and carriage company was unknown.    On the whole, we do not think it is shown that the exchange was fraudulent.    Moreover, the

6. ——: complaint of fraud by subsequent creditors.

transaction took place before any material part of the indebtedness involved in this suit, aside from that held by Mrs. James, was contracted, and, if the transaction was in fact fraudulent, creditors whose claims were created subsequently could not complain of it. *Fifield v. Gaston*, 12 Iowa, 221; *Whitescarver v. Bonney*, 9 Iowa, 484; *Porter v. Steel Co.*, 120 U. S. 649; 7 Sup. Ct. Rep. 741; *Graham v. Railway Co.*, 102 U. S. 148.

It is said the company had no authority to contract for the surrender of its own stock. The articles of

7. CORPORA-
TIONS: pow-
ers: surrender
of stock.

incorporation do not prohibit such contracts, while the powers they enumerate are broad enough to include the right to make them. *Iowa Lumber Co. v. Foster*, 49 Iowa, 26; *Bank v. Bruce*, 17 N. Y. 510; *Commissioners v. Thayer*, 94 U. S. 631. It follows from what we have said that the wagon and carriage company could not have asserted any claim against Mrs. James, at the time the trust deed was executed, on account of her acquisition of the bonds of the American Coal Company. Therefore, whatever rights she acquired by virtue of the trust deed passed to her assignee, the Western Mining and Investment Company.

IV.   It is further objected that when the trust deed was authorized and executed the husband of Mrs. James

8. ——: prefer-
ring credi-
tors: relatives
of directors.

was the president and a director of the company, and her brother, Mr. Reeves, was also a director, and that the deed could not have been authorized but for their influence. The relationship of the directors named to Mrs. James would not prevent their acting to secure her claims. She was not an officer nor stockholder of the company at that time; but, had she been one of its officers, that fact would not have deprived her of the right to enter into competition with other creditors in a race of diligence, availing herself of her superior knowledge and of her position to obtain security for or payment of her debt. *Buell v. Buckingham*, 16 Iowa, 291; *Warfield v. Canning Co.*, 72 Iowa, 666; *Garrett v. Plow Co.*, 70 Iowa, 697. Much less would it have prevented her relatives

on the board from acting in good faith, and without fraudulent intent, to secure or pay her. Much is said by counsel in regard to the original organization of the company. It is probable that some of its stock was issued for an insufficient consideration ; that some of the organizers of the company contributed property of little or no value, and received in exchange stock in large amounts at par ; but nothing is disclosed of which any creditor can take advantage in this action, to defeat the claim of Mrs. James, for reasons already stated.

V. The views we have expressed make it unnecessary to determine other questions discussed by counsel. We conclude that the attachment of Bibbins is valid, creating a lien upon the property on which it was levied paramount to the interest therein created by the trust deed. We also conclude that the trust deed operated to convey to Mrs. James an interest in the property therein described which her assignee, the Western Mining and Investment Company, is entitled to enforce. The correctness of the decree as to defendant W. T. Shaver is not presented by the appeal, and is not determined. REVERSED.