101   181
103   387

101   181
112   896
101   181
128   126

In the Matter of the Assignment of The Bloomfield Woolen Mills, W. J. Law, Assignee, v. D. R. Allender, Joseph McCarty, James Rouch, W. J. Law, W. H. McAchran, and Amos Steckel, Petitioners and Appellees, v. The State Bank of Bloomfield, Iowa, The Bloomfield Grain Company, J. T. Chaffee, Warrington, Prevoe & Company, N. S. Johnson & Company, W. H. Newman & Son, J. P. Tombs, A. H. Dodge, Wilkinson & Sax Brothers, The Standard Oil Company, and F. C. Halvey, Contesting Creditors and Appellants.

**Mortgage: delivery:** *Trustee.* A chattel mortgage, executed by a corporation, to a trustee, to secure a contingent liability of its directors, is effectually delivered where it is handed to the trustee, and the beneficiaries assume the contingent liabilities on the faith of the validity and effectiveness of the security offered by the mortgage.

**Same.** The mere fact, that the beneficiaries did not believe that they would be compelled to resort to a chattel mortgage executed to a trustee, by a corporation, to secure them against contingent liability on notes of the corporation, is not of itself sufficient to show that the delivery to the trustee, who had no beneficiary interest, was in escrow, merely, and intended to take effect as an actual delivery, only, in case it should become necessary to resort to the property.

**Mortgage to Officer: estoppel of creditor:** *Corporation.* The creditors of a corporation cannot object to a chattel mortgage given by the corporation on the ground that it was made to secure the directors of the corporation, where their representative advised the directors to indorse the paper of the corporation, and to take security from the corporation, and they took said mortgage on his advice.

**Mortgage and general assignment:** *Construction.* Mere proximity in time in the recording of a chattel mortgage and the execution of an assignment for creditors by the corporation executing the mortgage, is not of itself sufficient to justify an inference that the parties intended the instrument to operate as an assignment, although the mortgage was not effective until recorded.

INSOLVENCY DEFINED.  A corporation with a capital stock of fifty thousand dollars, having assets which, at a fair valuation, exceed its liabilities, exclusive of its capital stock, by twenty-seven thousand dollars, and which is doing a steady business, and is able to satisfy its creditors making demands upon it, is not insolvent.

Failure to Record:  FRAUD.  The mere fact that a chattel mortgage is not recorded at or near the time of its execution, does not render it fraudulent, but it only becomes so in virtue of some agreement which has for its purpose the protection of the mortgagor in order that he may continue his business on a fictitious basis and obtain credit which he cannot otherwise receive.

COMPLAINT BY CREDITORS.  Subsequent creditors cannot avoid a chattel mortgage because it was withheld from record by agreement, or tacit understanding of the parties, if they knew of its existence when they became creditors.

Appeal:  OBJECTION BELOW:  Where execution and delivery of a mortgage were admitted below, and the sole defense was that it was invalid for illegal preference, and failure to record, and it was stipulated that the mortgage should be applied for the use of its beneficiaries, if that defense failed, it cannot be urged, on appeal, that there was no present and effective delivery.

*Appeal from Davis District Court.*—HON. M. A. ROBERTS, Judge.

FRIDAY, FEBRUARY 5, 1897.

THIS is a contest between creditors as to their respective rights to a certain fund now in the hands of one W. J. Law, the assignee under a statutory deed of assignment of a corporation known as the Bloomfield Woolen Mills. The petitioners, Allender and others, claim to be entitled to the fund under and by virtue of a certain mortgage made and executed by the corporation to one W. J. Steckel, trustee, on the fifteenth day of December, 1893, covering all the property of the corporation, both real and personal, to secure them against certain indorsements of the paper of the company. The contestants aver that the mortgage upon which the petitioners rely, is fraudulent and void in this: that it was agreed at the time

the mortgage was executed that it should be withheld from the records, in order that the credit of the corporation might not be impaired. They also say that the corporation was insolvent at the time the mortgage was made, and that it has been ever since; that its present assets will not exceed seven thousand dollars, and that its liabilities are more than eighteen thousand dollars, and that all creditors should share *pro rata* in the avails of the corporation. On these issues the cause was tried to the court, resulting in a judgment and decree for the petitioners. Contestants appeal.—*Affirmed.*

*H. H. Trimble, Palmer Trimble, H. C. Taylor,* and *N. M. Hubbard* for appellants.

*Payne & Sowers* and *Amos Steckel* for appellees.

DEEMER, J.—The Bloomfield Woolen Mills was incorporated in July, 1892, with an authorized capital of fifty thousand dollars, thirty-six thousand dollars of which was paid up. It purchased real estate, and erected a plant thereon, the value of which has been variously estimated by the witnesses who were examined on the subject; but the preponderance tends to show that it was worth at least thirty-five thousand dollars. From time to time it borrowed money from various individuals, and particularly from the State Bank of Bloomfield. At one time the indebtedness to this bank was over twelve thousand five hundred dollars. This was more than it thought it ought to carry, and it discounted one of its notes for three thousand dollars, representing a part of the total debt, to the Keosauqua State Bank, and another, for four thousand dollars, fell into the hands of one Bradley. When this last-named note fell due, Bradley demanded the money of the Bloomfield Bank, to which he looked for

immediate payment, and a representative of this bank presented the matter to the board of directors of the woolen mills company. This representative was a Mr. Wallace, who was also the treasurer of the corporation and the cashier of the Bloomfield Bank. He suggested to the corporate directors, who are the petitioners in this case, that they make a new note to Bradley, and indorse it themselves, and take indemnity from the corporation. And he suggested that, if they would do this, his bank would carry the remainder of the twelve thousand five hundred dollars of the indebtedness for them. Acting upon this suggestion, a new note was made to Bradley by the corporation, to which the directors added their personal indorsements, at the same time the mortgage under which petitioner's claim was executed. This mortgage ran to W. J. Steckel, as trustee, and recited on its face that it was to secure the directors (naming them) for indorsements on commercial paper made at that time, or at any future period, for the Bloomfield Woolen Mills, and for money that might thereafter be loaned the corporation by any of these parties. This mortgage was not recorded until February 10, 1894. After the execution of this mortgage, some of the directors indorsed other notes of the corporation for small amounts. Early in the year 1894, the officers of the woolen mills company, found they could no longer carry on the business of the corporation on account of the general financial stringency and inability to realize on their product, and a deed of general assignment was executed by them to one W. J. Law, assignee, on the eleventh day of February, 1894. The notes to the State Bank of Bloomfield and the Keosauqua State Bank, were once renewed after December 13, and before the assignment of February 11, 1894. The property sold at assignee's sale for five

thousand five hundred dollars, but some claim is made that this sale was fictitious; but more of this hereafter.

I.   The appellants' first contention is that the woolen mills was insolvent at the time the mortgage was executed, and consequently the instrument is and was void.   We have defined insolvency to mean "inability to meet liabilities in the usual course of business," and have also said that "an institution is solvent when it possesses assets of sufficient value to pay within a reasonable time all its liabilities through its own agencies; and is insolvent when it does not possess assets of such value."   *State v. Cadwell*, 79 Iowa, 432 (44 N. W. Rep. 700).   With this for our guide, we now look to the condition of the corporation in December, 1893, at the time when the mortgage in question was executed.   It appears from the evidence that a short time before the instrument was executed, the capital of the corporation had been increased by the sum of fourteen thousand dollars cash, received for additional stock sold.   This was applied in payment of the indebtedness on the plant.   The indebtedness of the corporation at the time the mortgage was executed was nearly all represented by the notes to which we have referred, made in the first instance to the Bloomfield Bank.   The real estate and fixtures were supposed to be worth at least thirty-five thousand dollars.   The corporation had an equity, or supposed equity, of over five thousand dollars in goods already manufactured, and then on the market. It also had a contract with a commission firm known as Shaw & Co., to take the entire output of the mills, and pay two-thirds of the market value in cash, and the other third as fast as the goods were sold.   This advance payment would more than pay for the material and running expenses of the mill, leaving the deferred payment as clear profit.   The mills were then running on full time, and were apparently making money.   On

the fourth of September, 1893, the chairman of the finance committee made a report to the stockholders showing the excess of assets over liabilities (exclusive of stock) to be more than twenty-seven thousand dollars. At the time it made the mortgage it satisfied all its creditors who were making demands upon it, and apparently was not in strained circumstances. Manifestly it was not insolvent at the time the mortgage was executed.

II. It is next insisted that the mortgage to Steckel was never delivered. It is claimed that the instrument was handed to Steckel in trust for the benefit of both parties, and that it was not to take effect until the happening of some future contingency. As against this claim we have undisputed evidence of the actual delivery of the instrument to the trustee, and also a preponderance, as we think, to the effect that it was the intent of all parties that this should amount to a present delivery. Delivery in law is, of course, largely a matter of intent, and, looking to the record, we find abundant evidence that all the parties signed the note, and became bound on their contracts of indorsement on the faith of the validity and effectiveness of the surety afforded by the mortgage. True, there was some talk about whether or not it should be presently recorded. But this relates to another branch of the case, and we will not consider it here.

III. Claim is made that, if the mortgage was delivered at all, it was in escrow, and did not become effective until the happening of the contingency necessary to make it effective; that this contingency never happened, and that the instrument is void. It will be remembered in this connection that the mortgage was in fact delivered to the grantee. It is true that he was a mere naked trustee, and it may be he was not such a party to it as that he might not hold it in escrow; but this point we

need not decide, for we think it quite clear that the
delivery was intended as a present one, and that the
beneficiaries, as well as the trustee, regarded the
instrument as effectual and operative from the time of
the actual delivery.   It is no doubt true that the ben-
eficiaries, who were the directors of the corporation,
thought they saw assets of the corporation other than
the property covered by the mortgage with which the
Bradley note would be liquidated.  But they all testify
that they would not have obligated themselves to
pay the note but for the faith they had in the security
created by this mortgage.  It was intended by all the
parties that it should be effectual from the time of
delivery, although they did not think they would be
compelled to resort to it at the time the Bradley note
matured.  Moreover, we doubt if the question here
presented properly arises upon the pleadings.   Appel-
lants' counsel say that the matter arises on the face of
the petition, and that the facts recited therein show
there was no delivery, or, if it was delivered,
that it was in escrow.   There are two answers
to this:  *First.*   The defendants and contestants
admitted in their answer that the mortgage was
executed and delivered.   Their sole defense was that
it was invalid because of an agreement not to record,
and because of illegal preferences.  *Second.*   When
the case was about to be submitted, the parties
entered into a stipulation by which "it was agreed
that the cause should be transferred to the equity
docket, and tried on the merits; and, if said mortgage
was found to be valid; and not an illegal preference,
then the sureties are to be protected in the order of
distribution."   The question now made as to non-
delivery of the mortgage does not seem to have been
presented to the lower court, nor was it supposed to
be an issue between the parties when the evidence
was taken.  Enough has been said on the matter.

however, to indicate that we do not agree with appellants' counsel in their contention.

IV. The next point made by appellants is that it was executed in contemplation of insolvency, and was a disposition of the entire property to a part of the creditors, and was, therefore, void for preferences, or that it was executed at or near the time of the deed of general assignment, and was intended to operate with it, and give preference to certain creditors over others. We have already seen that at the time the mortgage was in fact executed, there was no thought of insolvency. On the contrary, the directors and managers all believed the corporation was a success, and were bright with hope. They did not intend to deprive themselves of the *jus disponendi* of the property. On the contrary, they expected the corporation to continue in business, and were evidently surprised when they discovered in February that the business could no longer be continued with profit. There was no intention at that time to make an assignment. If we should treat the instrument as effective only from the time it was recorded, as appellants claim, yet it was not so connected with the deed of general assignment, either in fact or intent, that the two instruments should be considered as one, and the mortgage avoided because of preferences. There is no evidence whatever, aside from proximity in time, from which it could be found that the parties intended these instruments to operate as one. And it has frequently been held that this one fact will not justify a court in considering them together, and as in effect one instrument. *Roberts v. Press*, 97 Iowa, 475 (66 N. W. Rep. 756); *Elwell v. Kimball*, —* Iowa, —— (69 N. W. Rep. 286), and cases cited. The intent of the parties is the controlling point of inquiry in such cases and there is no evidence here to show any such intent as is claimed. Indeed, there is no evidence as

NOTE—*This case will appear in a later report, it having been held on rehearing.—REPORTER.

to why the mortgage was recorded at the particular time it was deposited for that purpose. Under such circumstances we would not be justified in finding it a part of a general assignment.

V. Another point made is that the beneficiaries in the mortgage are directors of the corporation, and that as such they could not take security to the prejudice of other creditors. This question seems to be settled adversely to appellants in the cases of *Garret v. Plow Co.*, 70 Iowa, 702 (29 N. W. Rep. 395); *Warfield v. Canning Co.*, 72 Iowa, 670 (34 N. W. Rep. 467), and *Rollins v. Carriage Co.*, 80 Iowa, 386 (45 N. W. Rep. 1037). The writer of this opinion is inclined to doubt the correctness of the general rule adopted in these cases, but does not find it necessary to do more than this in this particular case, for the reason that he thinks that under the facts disclosed it is a proper rule to be applied. Mr. Wallace, the cashier of the Bloomfield Bank, and the gentleman who did the business for the Keosauqua Bank in the matter of renewing its loan, not only counseled and advised the directors to obligate themselves by indorsement of the Bradley note, but promised to carry the remainder of the debt of the corporation indefinitely. He was the treasurer of the corporation, and knew, or ought to have known, of the making of the mortgage. He advised taking of security by the directors, and he must have known the only way they had for doing so was to take a mortgage upon its property. We are also of the opinion that the Keosauqua Bank not only knew of these facts through their representative, Mr. Wallace, or ought to have known of them, but it also appears that the corporation had no dealings directly with the Keosauqua Bank. This bank seems to have purchased the note it held from the Bloomfield Bank, and looked to the Bloomfield Bank on its indorsement. The

claim on this note was filed with the assignee by the Bloomfield Bank, and this bank was bound by the knowledge of its officers. With these facts before us, it is clear that there is no reason why the directors could not protect themselves as against the claims of the bank.

VI. Again, there is more than a probability that all creditors will in the end be protected. True, the assignee sold the property for five thousand, five hundred dollars, but objections were filed to the approval of this sale, on the account of the inadequacy of price. It was bid off by a representative of the Bloomfield Bank, and upon the coming in of the objections to this sale, the representative agreed with some of the beneficiaries of the mortgage, that if they would not object to the sale, they should all hold the property as a syndicate, should sell it, and divide the amount realized over and above the five thousand five hundred dollars between them in proportion to the amount of their respective claims. The property now held by this syndicate, is valued at eighteen thousand dollars, which seems to be a fair, if not a low price for it.

VII. Appellants further claim that the mortgage is fraudulent, because withheld from the record by agreement of the parties thereto. Whether or not there was such an agreement, is the question of most dispute in the case. We have carefully examined the record upon this question, and reach the conclusion, that while there may have been some talk with reference to the effect of withholding it, yet there never was, in fact, any agreement to do so. Mr. Steckel, one of the beneficiaries and petitioners in this case, is a lawyer, and it seems that some questions were asked at the time the mortgage was determined upon by the directors, as to the effect of withholding it from the

record.    Steckel stated the law upon this subject, as we have many times announced it, but there was no agreement or understanding not to record.    It was not recorded until the day before the assignment was executed, but this seems to have been due wholly to the volition of the trustee.    The mere fact that an instrument is not recorded at, or near the time of its execution, does not render it fraudulent.    It only becomes so in virtue of some agreement or arrangement between the mortgagor and mortgagee, which has for its purpose the protection of the mortgagor, in order that he may continue his business on a fictitious basis, and obtain credit which he could not otherwise receive.    Such deceit requires the concurrence or connivance of both parties.    The mere hope of the one or the neglect of the other, will not amount to fraud.    These rules are well settled, and require no citation of authorities in their support.    But see *Lemert v. McKibben*, 91 Iowa, 345 (59 N. W. Rep. 207), and cases cited.    But let this be as it may, most of the creditors protesting against the establishment of .the mortgage, were such at the time the instrument was executed.    True, the Bloomfield Bank and the Keosauqua Bank extended the time of payment of their notes, and this no doubt, would make them subsequent creditors.    But we are constrained to believe that the representative of these banks knew, or ought to have known, as a reasonably prudent person, of the existence of the mortgage.    If he did know this, then the banks were not defrauded, even if the mortgage was withheld from record by agreement or tacit understanding.    The whole case impresses us as one singularly free from fraud, either actual or constructive.    The mortgage which is attacked, was really for the benefit of the bank, which is now the largest creditor.    But for it, the bank would be holding four thousand

dollars more of the obligations of the corporation than it has at present. The directors pledged their personal responsibility on the faith of an agreement on the part of a representative of the bank, that the remaining obligations held by it should not be pressed. At the time they did this, every one had faith in the success of the mills, and but for the financial panic which has so recently stranded many a solvent institution, there is little room for doubt that their faith would have been justified. We conclude that the decree of the district court is equitable and just, and it is AFFIRMED.