CRIS JOHNSON, Appellant, v. CHARLES JOHNSON, *et al.*

**Fraudulent Conveyance:** WEIGHT OF EVIDENCE: *Preferences.* Testimony of a mortgagee, suing to foreclose, that the debt for which the mortgage was given, existed at the execution of the latter, corroborated by testimony of an attorney who had been authorized to collect the debt, is not overcome by statements made by the mortgagee prior to taking the mortgage that the debt was paid, and that he and the debtor were "square." There was nothing call-for accuracy in the alleged statements, they may have been misunderstood, and plaintiff denied making them.

SAME. A debt due the brother of the debtor remained outstanding and unsecured for more than two years before the mortgage in suit was given to secure it. Immediately prior to execution of the mortgage, the mortgagor was threatened with a prosecution for seduction, and believed that all his property would be taken to support the woman and child. The woman brought a civil proceeding to which the mortgagee was not a party, after the execution of the mortgage, and procured a decree giving her title to the mortgaged land for the support of herself and child. *Held* that, in the absence of fraud on the part of the mortgagee, the mortgage was not fraudulent as against her, since an insolvent may lawfully mortgage all his property to secure a portion of his debts, though nothing remains for payment of debts not secured.

*Appeal from Lee District Court.*—HON. A. J. McCRARY, Judge.

WEDNESDAY, APRIL 7, 1897.

ACTION in equity, to recover an amount alleged to be due on a promissory note, and to foreclose a real estate mortgage, given to secure its payment. The defendant, Albertina Johnson, claims to be the owner of the mortgaged property, and avers that the note and mortgage were given without consideration, for the purpose of defrauding her. She asks that the mortgage be canceled of record, and that the title to the lots be quieted in her. There was a hearing on the merits, and a decree in favor of Albertina Johnson, which quieted in her the title to the lots in controversy. The plaintiff appeals.—*Reversed.*

*James C. Davis* for appellant.

*J. F. Smith* for appellee.

ROBINSON, J.—The plaintiff and the defendant Charles Johnson are brothers, and Charles and Albertina are husband and wife. The mortgaged property consists of two lots in Kilbourne's addition to the city of Keokuk. They were purchased by and conveyed to Charles Johnson in November, 1891. At the same time he gave a mortgage thereon for the sum of four hundred and fifty dollars. In May, 1892, the plaintiff loaned to Charles Johnson four hundred and fifty dollars, which were used in satisfying the mortgage, and, in addition, fifty dollars, which were used to pay expenses incurred in repairing a house. In March, 1893, the plaintiff left the city of Keokuk, where he had been living, and went to Sweden, where he has since resided. The defendants were married to each other on the ninth day of July, 1894. On the twenty-fifth day of the preceding month, Albertina had given birth to a child, of which her present husband was the father. She had informed him of her condition five months before the child was born, and frequently

threatened to prosecute him for seduction. On the second day of July, 1894, Charles Johnson made to the plaintiff the note and executed the mortgage in controversy for the sum of five hundred dollars, and the mortgage was recorded on the same day. The plaintiff was represented in the transaction by an attorney named Anderson. Three days after the mortgage was given, the defendant Albertina filed an information in the superior court of the city of Keokuk, charging Charles Johnson with having seduced her. He was arraigned on the ninth day of July, and ended the proceedings by marrying the prosecutrix. In August, 1894, Mrs. Johnson instituted in the district court of Lee county, a proceeding against her husband, aided by an attachment of the lots in question, which was designed to obtain support for herself and their child. The proceeding resulted in a decree on the second day of October, 1894, which provided that she recover of her husband the sum of five hundred dollars, and an attorney's fee of fifty dollars, and costs; and a lien therefor on the lots in question was established, and the lots were ordered sold to satisfy the decree. On the eleventh day of the same month, Mrs. Johnson filed a motion in that case, asking the court to modify the decree and give her the absolute title to the property, on the ground that her husband had abandoned it and left the country, and that depreciation and waste would be prevented and costs avoided by giving her the title as asked. The court thereupon rendered a supplemental decree, which, in terms, set aside so much of the original decree as authorized the recovery of five hundred dollars, and gave Mrs. Johnson the absolute title and the right to the immediate possession of the lots. The plaintiff was not made a party in that proceeding. In January, 1895, this action was brought to recover the amount of the note given by Charles Johnson to the plaintiff, and to

forelose the mortgage given to secure its payment, with the result already stated.

I. It is claimed that Charles Johnson was not indebted to the plaintiff when the note and mortgage in suit were given, and that they were wholly without consideration. To support that claim, Mrs. Johnson relies upon the testimony of two witnesses, one of whom states that the plaintiff told her just before going to Sweden, in response to her question, "What will become of your house?" that "It will be all right, because my brother has paid me for that." The other witness states that he talked with the plaintiff about the time he left Keokuk. He then told the witness he had not anything more to do with the house; that he and his brother "were pretty near square," or "all square." The statements to which these two witnesses testify were of a somewhat general nature, and were not made under circumstances which called for any accuracy of statement. What the plaintiff said may not have been fully understood. Moreover, he denies having made the statements alleged, and testifies explicitly that he loaned his brother four hundred and fifty dollars in May, 1892, to enable him to pay the mortgage on the lots, and fifty dollars in addition for the expense of repairing, and that the entire sum, with interest thereon at the rate of six per cent. from the date of the loan, is due. He is corroborated to some extent by Anderson, who testifies that he was authorized by the plaintiff before he went to Sweden to collect or take security for the amount due him from his brother. We conclude that Mrs. Johnson has failed to overcome the evidence which tends to show that her husband owed the plaintiff on the date of the note and mortgage the amount for which they were given.

II. Whether the note and mortgage were given and accepted, in part, to defraud Mrs. Johnson, is a question

more difficult to decide satisfactorily. It is true that both the plaintiff and Anderson testify that the latter was authorized to collect the amount due the plaintiff from his brother, or to take security for it. But more than two years had elapsed from the giving of that authority, and nothing whatever had been done, so far as we are informed, to collect or obtain security for the debt. The plaintiff does not claim that he asked anything of his brother, nor that he urged Anderson to take any action during that time. Anderson did not ask Charles for the money, nor for security, although he had heard that Charles was likely to have trouble with the woman he married. The first thing done to secure the loan was by Charles, who went to Anderson, and told him he thought he was getting into trouble, and did not care how things went, if he could secure his brother. At that time the child had been born, and threats of prosecution on account of the alleged seduction had been frequently made by the woman. We have no doubt that Charles believed that a crisis had been reached, and that proceedings would probably be instituted against him which might result in the taking of the property in question for the use of the woman and the child, if he did nothing to prevent it, and that he wished to give his brother a first claim upon his property. It is doubtful, at least, if there was more in this, in a legal sense, than a desire to secure one liability with property, which, if the security was not given, might be taken in payment of other liabilities. It is well settled in this state that an insolvent debtor may lawfully mortgage all of his property to secure a portion of his debts, even though nothing remains for the payment of debts not secured. *Rollins v. Carriage Co.*, 80 Iowa, 387 (45 N. W. Rep. 1037); *Oil Co. v. Haas*, 73 Iowa, 404 (33 N. W. Rep. 657), and (35 N. W. Rep. 494), and cases therein cited. See, also, Bump, Fraud. Conv.,

sections 167, 168.   And where such a mortgage is made with a fraudulent intent on the part of the mortgagor, if the mortgagee do not participate in that intent, but merely desires, in good faith, to obtain security for a just claim, the mortgage is valid.   *Stroff v. Swafford*, 81 Iowa, 699 (47 N. W. Rep. 1023), and cases therein cited.   The mortgage given to the plaintiff in this case appears to have been given to secure a valid debt. Nearly all of that debt was for money used in paying the purchase price of the mortgaged property, and the remainder seems to have been used in improving it. The value of the property is not shown, but the consideration recited in the deed to Charles Johnson was six hundred and twenty-five dollars.   The mortgage was given for but five hundred dollars, although that sum and interest thereon for more than two years were due, and was taken by Anderson pursuant to an authority which had been duly conferred upon him by the plaintiff.   The fact that payment of the debt had not been urged before that time does not show that the plaintiff acted in bad faith in taking security for it when his brother became threatened with financial embarrassment.   As he was not a party to the proceedings by the wife against the husband, he was not bound by the decrees therein rendered, and we need not consider their legal effect.   We reach the conclusion that the note and mortgage of the plaintiff are valid, that his lien upon the mortgaged premises is superior to that of Mrs. Johnson, and that he is entitled to a foreclosure of the mortgage as against her.   The decree of the district court is REVERSED.