| 64 | 577 |
|----|-----|
| 81 | 699 |

| 64 | 577 |
|----|-----|
| 111 | 144 |

</div>

## COLLIER ET AL. v. FRENCH ET AL.

1. **Fraudulent Conveyance:** FATHER TO DAUGHTER : SERVICES OF DAUGHTER AS CONSIDERATION. Where a daughter, after attaining her majority, renders domestic service in her father's family under promise, made before the services have ended, that she shall be compensated therefor, such services may be a valid consideration for a conveyance of land by the father to the daughter; and, in view of all the facts in this case, (see opinion,) such a conveyance is sustained as against the father's creditors.

2. **Attachment:** CONSTRUCTIVE NOTICE OF: WHAT IS NOT. Where the sheriff intended to attach land in township 67, but the return on his writ showed an attachment of land in township 68 only, but his entry in the incumbrance book recited an attachment of land in township 67, *held* that such entry did not constitute constructive notice to subsequent purchasers and incumbrancers of an attachment of land in township 67.

*Appeal from Van Buren Circuit Court.*

WEDNESDAY, OCTOBER 22.

ACTION in equity to set aside certain conveyances of real estate, and a mortgage on the same. There was a decree for all the defendants except John C. French. The plaintiffs appeal.

*Anderson Bros. & Davis* and *Lea & Wherry*, for appellants.

*D. C. Beaman*, for appellees.

ADAMS, J.—The defendant, Enoch French, was, in January, 1879, the owner of a quarter section of land in Van

**1. FRAUDU-LENT convey-ance: father to daughter: services of daughter as considera-tion.** Buren county, of which forty acres were occupied by him as his homestead. On the fourth day of January, 1879, he conveyed to his daughter, the defendant Ann M. Walker, forty acres of the land. What consideration was expressed in the deed does not appear. On the eleventh day of January, 1879, the defendant Enoch conveyed to his son, the defendant John C. French, eighty acres of the land, for the consideration of an agreement on the part of John to give his father one-third of the crops during his father's life. On the fourth day of March, 1879, the defendant Enoch borrowed of the defendant Bowman $2,400, for which he gave a promissory note, signed by himself and the defendants John C. French and Ann M. Walker, and to secure the same the makers of the note joined in executing a mortgage upon the quarter section of land which included the eighty acres conveyed to John and the forty acres conveyed to Mrs. Walker, and the forty acres occupied by Enoch as his homestead. The plaintiffs are judgment creditors of Enoch; and they bring these actions to set aside the conveyances and the mortgage, as having been made by Enoch with intent to defraud his creditors.

They averred that the deed made to Mrs. Walker was without consideration. For the purpose of proving their averment, they introduced as a witness the grantor himself, who testified that the deed was executed in consideration of services rendered to him by Mrs. Walker and her son. But he testified also that they were living with him at the time; and the plaintiffs insist that the evidence shows they were merely members of the grantor's family, and were rendering service as such, and without any contract that their services were to be paid for.

The undisputed evidence shows that Mrs. French, the

mother of Mrs. Walker, was in poor health; that Mrs. Walker, prior to her marriage, lived at home from the time she was eighteen years of age until she was twenty-five; that she was then married, and lived apart from her father's family eighteen years ; that afterwards her husband went to the mountains to work, and she returned to her father's family and worked two years longer, making nine years in all, and that her services were reasonably worth $2 per week; that when she returned as a married woman she brought some furniture with her, and had some resources by which she was aided in clothing herself; that she brought with her a son two years old, and another fourteen years old, who lived with his grandfather three years, and rendered service in carrying on the farm. As to the agreement to pay her, the defendant Enoch testified in these words: "I owed Ann M. Walker for services of her and her minor son, Enoch F. Walker, that had worked for me three years ; I owed her for nine years' service at $1.50 per week I told her I would allow her. I told her that at different times when she was with me. I can't specify the times. She first began to work for me at $1.50 per week after she was eighteen years of age, and she worked for me seven years before she was married."

The plaintiffs insist that, while the witness testified that he told Mrs. Walker at different times while she was with him that he would pay her $1.50 a week, he did not tell her so before the services were rendered.

There is no evidence, however, that Mrs. Walker remained with her father after her services ceased, and we infer that she did not. What, then, was said to her about her compensation appears to have been said during the time she was employed. Such promises, if made, we think, would bind the promisor according to their terms. The plaintiffs insist, however, that the promises, though testified to by their own witness, were not in fact made. As showing that they were not, they rely upon other expressions of the witness.

He testified as follows: "She did not make any claim as to how much I owed her." "I did not intend to pay her at that time, or at any time until I saw proper to distribute my property among my children, and, besides, I was not asked. I was acting as my own executor, and had been for a year or two disposing of my property as I saw fit." They rely also upon the fact of the great delay which had occurred.

In respect to these things, we have to say that they are not necessarily inconsistent with the witness' testimony that he promised to pay his daughter for her services. They show, at most, a loose idea upon his part in respect to the discharge of his obligation. But every one knows that members of a family do not always, nor generally, deal with each other quite as strangers do. Besides, it does not appear that the witness had the power to pay his daughter without disposing of an important part of his farm. He might have thought, and not improperly, that it was better for all that he should preserve the integrity of his farm while he was himself able to carry it on. But he never seems to have abandoned the idea of doing justice to his daughter, though it were late justice.

Some stress is laid by the plaintiffs upon the fact that the conveyance was made in the face of threatened bankruptcy. But if he really owed his daughter, he did no more than many fathers would have done, and all might lawfully do. It appears, also, that his bankruptcy was brought about by becoming surety for others, which would tend to explain his desire to prefer his daughter, if it needed explanation. His conveyance can be easily accounted for upon other ground than that of fraud.

But it is said that Mrs. Walker afterward joined in a mortgage upon the land to secure money borrowed by her father, as if it were still his land. What Mrs. Walker's motive was the evidence does not show. It is possible, of course, that her father did not promise to pay her as he testified, and that the conveyance was without consideration, and that she knew

that her title could not be sustained as against his creditors, and was willing, for this reason, to mortgage the land to enable him to raise money. But we should be going very far to say that we should be justified in so · holding. We may assume that her father represented to her that he needed to borrow money, and needed her assistance, as well as that of his son, and that she was willing to assist him. As to what the· father's idea was, the evidence seems to be somewhat clearer. He doubtless apprehended that the conveyances, whether valid or not, would be attacked. The money which he borrowed he did not expend. There is ground for the inference that his idea was to protect the conveyance if he could, but to put himself in a condition, as far as possible, for paying the plaintiffs' judgment, if he must. But his idea, whatever it was, would not of itself alone affect the validity of Mrs. Walker's deed. In our opinion the decree of the court in respect to her deed must be sustained. As to the conveyance to the defendant John .C. French, we need say nothing. That was declared invalid, and he does not appeal. He does, it is true, claim to have given notice of appeal, but the notice was given several months too late.

The mortgage, however, to Bowman was sustained, and the plaintiffs contend that in this the court erred. There is no 2. ATTACHMENT: constructive notice of: what is not. question but that Bowman actually advanced $2,400, the amount which the mortgage purports to have been given to secure. It is shown that Bowman was a money lender, and he does not appear to have sustained any relation to the defendants. He did, we think, know of the pendency of the plaintiffs' action, and of an attempt on their part, though an abortive one, to attach the land in question. We think it probable that he knew, or had reason to suppose, that the borrower was financially embarrassed. But it is precisely that class of men who borrow money if they can manage to give security. We should not be justified in holding that every money-lender, when applied to for a loan by a person in debt, should infer a fraudulent

intent, and should understand that he can get no valid mortgage as against known creditors. We do not see anything in the evidence sufficient to impeach the mortgage.

One fact remains to be stated. The plaintiffs in their original action obtained a writ of attachment, and they claim that the same was levied upon the land in question before the execution of the deed to Mrs. Walker or the mortgage to Bowman. Their position is that, conceding that the deed and mortgage are valid, they are subject to the attachment, and should have been so held.

Whether, taking the deed and mortgages to be valid, as we do, there is anything in the case which calls for the interposition of a court of equity, we need not determine. The appellees do not insist upon such position, and have seen fit to stake their defense upon the proposition that the evidence does not show a prior attachment, and in this we think that they must be sustained.

It is conceded by the plaintiffs that the return upon the writ shows an attachment of land only in township sixty-eight, whereas the land in question is in township sixty-seven. The plaintiffs contend, however, that, notwithstanding what the return shows, the levy was made upon the land in question, and that this appears from a subsequent amended return, which must be taken as evidence of what was done; and that as to the constructive notice provided for .in the encumbrance book, it is said, and such appears to be the fact, that that showed a levy upon the land in question, and not in township sixty-eight.

We have a case, then, where there were executed a deed and mortgage of land, not shown to be attached by any return upon a writ of attachment, but so shown by the encumbrance book, and where, doubtless, the officer's intention was to levy upon the land. The question presented is whether the formation of such intention, and the entry of such statement in the encumbrance book, could constitute a levy. In our opinion they could not.

The statement in the encumbrance book does not, we think, in any case constitute any part of a levy. The provision for the statement is in these words: "No levy of an attachment upon real estate shall be notice to a subsequent vendee or encumbrancer in good faith, unless the sheriff making such levy shall have entered in a book, which shall be kept in the clerk's office in each county by the clerk thereof, and called an encumbrance book, a statement that the land, describing it, has been attached, and stating the cause in which it was so attached, and when it was done." Code § 3022. It will be seen that the sole purpose of the statement is to constitute constructive notice. There may be a levy without it. The statement is not necessary to entitle the plaintiff to a special execution, nor to enable him to maintain the attachment as against a subsequent purchaser with actual notice. But if the entry in the encumbrance book constituted no part of the levy, then the levy, so far as the land in question is concerned, must, at the time of the execution of the deed and mortgage, have consisted merely of an intention to levy. That the law cannot recognize and give force to an unexecuted intention, by treating it as equivalent to the act intended, is too nearly self-evident to require demonstration. While in some states, it seems, a levy upon real estate is made by a formal entry thereon, such act is probably not necessary in this state. But there must be some act by which the intention to make a present levy is evinced. The usual act is the making of the return. In the case at bar, nothing having been done which can be construed as constituting a levy upon the land in question at the time of the execution of the deed and mortgage, we are unable to see how the attachment can be deemed paramount.

The plaintiffs complain that this view is technical, but they forget that their position is equally so. They seek to charge a *bona fide* grantee and mortgagee with constructive notice of their lien, and constructive notice is a pure technicality. There is no pretense that the appellees saw the statement in

the encumbrance book; but, if they had seen it, such statement would, by express provision, have directed them to the action, and a reference to the records in that action would have shown that the land in question had not been attached. We think that the decree of the court below must be

<div style="text-align: right">AFFIRMED.</div>