CHARLES STROFF, Appellant,   v.   SWAFFORD BROS. *et al.*, Appellees.

81   695
97   481
101   410

81   695
105   390

1.   **Debtor and Creditor :** CONVEYANCE : FRAUD : NOTICE.   A con-
veyance of real estate made by an insolvent firm, pending litiga-
tion, to the father-in-law of one of the partners, to secure him for
advances of money made to the firm to about the market value of
the land, over and above the amount of incumbrances thereon,
and which is received in good faith for the purpose of security
only, *held*, not invalid as against other members of the firm, even
though the grantee had knowledge of a fraudulent purpose on the
part of the firm at the time the conveyance was accepted.

81   695
114   293

81   695
117   24

81   695
128   590

81   695
131   185

2.   ——— : ——— : RESERVATION IN FAVOR OF DEBTOR.   A secret
agreement between the debtor and creditor at the time of the
delivery of such conveyance, that the debtor shall remain upon
the land for one year, for the purpose of taking care of stock kept
thereon, and belonging to the creditor, and that for such privi-
lege the debtor should pay the taxes against the land for such
year, *held*, not to constitute such a secret reservation in favor of
the debtor as to render the conveyance fraudulent.

*Appeal from Linn District Court.*—HON. JAMES D. GIFFEN, Judge.

TUESDAY, JANUARY 27, 1891.

C. G. AND L. G. SWAFFORD were partners and composed the firm known as Swafford Bros. Prior to March 17, 1888, they owned two hundred and sixty-five acres of land, which is a subject of controversy in this case. On that day they conveyed the land by warranty deed to defendant, L. B. Strang, who is, and was then, father-in-law to L. G. Swafford. The consideration for the land, as claimed by Strang, is twenty-one hundred and ten dollars, advanced by him to Swafford Bros. from time to time, with a liability for the payment of incumbrances on the land of thirty-eight hundred dollars. On the same day, for a consideration of seven hundred and seventy-five dollars, C. G. and L. G. Swafford made to defendant Strang a chattel mortgage on certain personal property then on the farm before conveyed, the said farm and personal property being all the property owned by said Swaffords not exempt from execution. At the time of these transfers the plaintiff was, and still is, a judgment creditor of Swafford Bros., and this action is to set aside these transfers of property as in fraud of their rights. The district court denied the prayer of the petition, and from its judgment the plaintiff appeals.

*Wm. G. Clark* and *James A. Reed*, for appellants.

*Milton Remley* and *H. B. Heberling*, for appellee Strang.

GRANGER, J.—The appellant follows his statement of facts, preceding his argument, as follows: "On the foregoing facts, with other circumstances to be pointed out hereafter, appellant asks the court to declare the transfer of the real and personal property void on four

grounds : *First*. Because the transaction is uncon-
scionable as against creditors,—a palpable and mon-
strous fraud. *Second*. It is fraud *per se* for Strang to
appropriate the property of Swafford Bros., or of C. G.
Swafford, to pay the personal debt of L. G. Swafford.
*Third*. Because of a secret reservation of a year's
rental of farm. *Fourth*. Because of Strang's pur-
chase of the personal property, with full knowledge of
the Swaffords' fraudulent design." The consideration
of the questions thus presented will be a very accepta-
ble way of disposing of the case.

I.    The first proposition leads us to consider the
circumstances under which the transfers were made.
In the latter part of 1887, there were
pending against Swafford Bros. three sepa-
rate suits, in which judgments have been
obtained, two of which constitute liens on
the land in question to the amount of twenty-eight
hundred dollars, and is a part of the incumbrance
referred to in the statement of facts. The other was
the suit of plaintiff, in which the judgment was
obtained now sought to be enforced against the land.
At the time of the transfer these suits had not been
finally determined. The fact of the pendency of the
suits was known to defendant Strang before and at the
time of the transfers, and he was fully aware that
the Swaffords were being pressed by their creditors, and
were, in fact, insolvent. These are the prominent facts
upon which appellant relies to establish the fact of the
fraud. We do not understand that it is seriously
questioned but that Strang loaned to L. G. Swafford or
to Swafford Bros. from October, 1885, to March, 1886,
twenty-one hundred and ten dollars, nor that he
actually furnished seven hundred and seventy-five
dollars, for which the chattel mortgage was given as
security.

A disputed question in the case is whether the
twenty-one hundred and ten dollars was loaned to
L. G. Swafford or to the firm, and it will be well to first
settle that question of fact, to more readily know the

*1. DEBTOR and creditor : conveyance: fraud: notice.*

legal questions to be met. Appellant insists upon the fact that it was an individual loan to L. G. Swafford, but we think otherwise. Nothing is clearer than that L. G. Swafford, in obtaining the money, intended it for the firm, and not, as is thought, to meet his obligation to the firm, but because the firm needed money. There is no testimony to show that he was required to furnish such money. It does appear that both members of the firm procured from their friends money for the use of the firm, but nothing to show that it was because of an individual obligation to do so. L. G. Swafford, who obtained it, says it was for the firm, and was used by the firm. Such is the general purport of the evidence with reference to that fact. Some statements, as that the money was obtained or loaned to L. G. Swafford, are in the record, but have reference more particularly to the fact that he was the one who asked for and received it. We think the money was loaned to the firm.

With the fact established that Strang was a *bona fide* creditor of the firm, very much of the difficulty on this point of the case is removed. Of course, Strang could be a creditor, and yet act with a fraudulent intent in accepting the conveyances, but, in such a case, it is far more difficult to show the fact. From the evidence it appears that Mr. Strang is quite a wealthy and prosperous farmer. His testimony impresses us with the belief that he is a man of remarkable candor and fairness, not deviating from the truth when against his interest, as in many cases he might have done to his apparent advantage. From the evidence we find about this state of facts at the time of the transfers : Strang was a creditor of the firm. He had loaned the twenty-one hundred and ten dollars, without a thought that it was unsafe. In the fall of 1887, and later, to the time of the transfer, he knew the firm was financially embarrassed, and in failing circumstances. He was offered the farm, with what then appeared to be an incumbrance of thirty-eight hundred dollars in payment. He was in the position of accepting

that, or the chances of a partial or entire loss. His acts, if in good faith, were in accord with business prudence. We think the value of the land was not largely, if at all, in excess of the debt and incumbrance to be paid. The evidence ranges from twenty to thirty dollars per acre. The cost to Strang is nearly twenty-three dollars per acre, and is likely a fair market price. Importance is attached to the fact that some of the liens might have been removed by a reversal of the judgments, and there seems to have been no provision made at the time of the transfer as to what should be done in such a case. The evidence does not show an expressed understanding in that respect. There is some evidence as to the opinions of witnesses in that event, but it is of no moment. The liens existed, and for the purpose of the case continue to exist. There is no evidence of an agreement that Strang should not pay the full price, if for any reason the liens were removed. The case is argued, in its legal aspect, much as if it were a case in which Strang, with knowledge that the Swaffords were disposing of their property to defraud their creditors, purchased the farm, and parted with his money with such knowledge. Strang was a creditor, and in such a case had a right in good faith to secure payment, even if there was knowledge of a fraudulent purpose on the part of the Swaffords. *Johnson v. McGrew*, 11 Iowa, 151 ; *Carson v. Byers*, 67 Iowa, 606 ; *Chase v. Walters*, 28 Iowa, 460 ; *Aultman v. Heiney*, 59 Iowa, 654 ; *Collier v. French*, 64 Iowa, 577 ; *Aulman v. Aulman*, 71 Iowa, 124 ; *Manuf. Co. v. Mastin*, 75 Iowa, 112 ; *Stewart v. Bank*, 76 Iowa, 571 ; *Lead Co. v. Haas*, 73 Iowa, 399. We reach quite a satisfactory conclusion that Strang did not, in legal contemplation, participate in any fraud to defeat the creditors of Swafford Bros.

II.   The second proposition is disposed of by our finding that the debt was that of the firm, and not of L. G. Swafford personally, except as a member of the firm.

III.   It is a part of the contract for the purchase of the farm that C. G. Swafford, who was then living on

2. ——: ——:
reservation in
favor of
debtor.

it, should remain during that year, and it is urged that, because of such agreement, the transaction is void as to creditors under the rule announced in *Macomber v. Peck*, 39 Iowa, 351, and in *Dean v. Skinner*, 42 Iowa, 418, and other cases. The rule there stated is that, "where land is conveyed with a secret reservation, that the vendor shall have the right to use and enjoy it for a time without the payment of rent, such use and enjoyment constituting a part of the consideration the conveyance is fraudulent in law, although based on a valuable consideration." To our minds the facts of this case do not bring it within such rule. We have found that there was no fraud in fact. Before the rule as to fraud in law will be applied, the facts must bring the case clearly within it. In regard to the occupancy of the farm, Mr. Strang says in his cross-examination: "It was in the contract for the purchase of the farm that I was to let them occupy the farm for the ensuing year, they taking care of the stock. Yes, sir; that was in the bargain. He was to remain there; didn't want to change. Yes, sir; he was to pay the taxes for the privilege." In his direct examination he says: "C. G. was not paying any rent during the year 1888. I bought the cattle in June, and the cattle were to run there during the fall. I got the privilege of the cattle running there until fall, and he took care of them for me." This purchase of the cattle, as we understand, was an absolute purchase of those included in the mortgage given March 17, before. Mr. Strang in his testimony further says: "The understanding was that C. G. was to stay there this year. There was no written agreement. I bought the cattle the last of June. No; I didn't buy. Yes, I did. I bought everything that was covered by that chattel mortgage. At least, I agreed on the prices the cattle should be. I received no bill of sale. The cattle was to remain on the farm, and they was to take care of them. I did not pay them anything. He was living on the place then." It is quite clear to us that the occupancy of the farm by C. G. Swafford

constituted no part of the consideration therefor. At the time of the purchase of the farm there was a trans- fer to Strang of the cattle, which he desired to remain on the farm, and, as he resided elsewhere, they must be cared for by others, and it was agreed that C. G. Swafford might remain and care for the cattle, and pay the taxes for the privilege. Such is a fair conclusion from the testimony. It is not then a case within the rule of the cases cited. There was no secret reserva- tion of rent by which creditors could be defrauded.

IV.    It is lastly urged that the sale is void " because of Strang's purchase of the personal property, with full knowledge of the Swaffords' fraudulent design." We need say no more than that the proofs do not satisfy us of the purchase being under such a state of facts. It is true that he made the purchase with the knowledge of their litigation, and we may say insolvency, but it does not follow that they made the sale for a fraudu- lent purpose, or if they did that he knew it. This seems to have been the view of the district court, and its judg- ment is AFIRFMED.