# Fargason & Co. v. Hall.

*Bill in Equity by Creditors to set aside Sale of Goods by
Debtor as Fraudulent.*

1. *Sale of goods by insolvent debtor to creditor; validity as against
other creditors.*—When a sale of his entire stock of goods by an insol-
vent debtor to one of his creditors is attacked by other creditors on
the ground of fraud, the only questions for consideration are, (1)
the *bona fides* of the consideration paid; (2.) its sufficiency, and (3.)
whether any benefit was reserved to the debtor; if the debt of the
purchasing creditor is *bona fide* due and subsisting, its amount not
much less than the reasonable value of the goods, and no benefit is
reserved to the debtor, the transaction will be sustained against the
attack of other creditors.

2. *Same; case at bar.*—In this case, the court examines and states
the evidence, and holds the transaction valid, finding (1.) that the
debts of the purchasing creditors were *bona fide* due and subsisting,
and amounted to $2,825; (2.) that the goods were valued at $3,000,
and were afterwards sold by the receiver in the cause for $3,164;
(3.) that the sale also included the debtor's outstanding notes and
accounts, which were estimated at $850, and on which the receiver
collected $804; (4.) that these were included in the sale on the urgent
insistence of the debtor, in order that he might pay certain other
creditors, and the money was used by him for that purpose; and (5.)
that no benefit was reserved to him.

APPEAL from the Chancery Court of Colbert.
Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 5th day of Novem-
ber, 1889, by the appellants, J. T. Fargason & Co., against
the appellees, and its object was to set aside as fraudulent
against his creditors, a sale of a stock of goods and his
notes and accounts, made by A. M. Hall to Throne, Franklin,
Nance & Adams, and J. S. Reeves & Co., the two defendant
firms, to which he was indebted.

"The material allegations of the bill are, that prior to the
25th of October, 1889, A. M. Hall was a merchant at
Cherokee, Alabama, carrying on a general merchandise

14

business, and had been so engaged for several years; that on that date said Hall was indebted to complainants in a large sum of money—$2,640.62; that he was insolvent, and on that date he sold all his stock of goods, notes and accounts, to the defendant firms, the consideration being the debts he was then owing said defendants, which are alleged to have been less than $3,000, and $800 in cash then and there paid to him; that the consideration for the alleged sale was inadequate, not being more than one-half of the value of the property transferred; that defendants knew that said Hall was insolvent, and that the property attempted to be transferred to them was worth more than twice the amount of their debts; that said attempted sale was made to hinder, delay and defraud the complainants, and the other creditors of said Hall, and was fraudulent and void, and the prayer is to have it so declared.

"On the application of the complainants, a receiver was appointed, who took charge of the property transferred to defendants, sold the goods, collected the notes and accounts, as far as practicable, and has the proceeds in hand. A separate answer was filed by A. M. Hall. The other defendants answered, admitting the insolvency of Hall, and their belief of that fact at the time they made said purchase. They allege that the property they bought was worth less than they paid for it, and deny the allegation that it was worth more. They also allege that, in their transactions with Hall, they gave up their claims against him, aggregating the sum of $2,825, and paid to him $853 in money, for the purpose and with the understanding and requirement on their part, that he should pay the same to certain creditors of his for borrowed money, whose names he gave; that Hall himself required them to pay this sum in cash, as a condition to his making the sale, so that he might pay off these debts, and that he did accordingly pay out the whole sum thus received for that purpose. They state the amounts of their respective debts, which they allege to be due, owing and *bona fide;* deny that any benefit was reserved to the said Hall, or that there was any fraud or purpose to hinder and delay the other creditors of said Hall, but that the transaction was fair and honest.

"The chancellor, on final hearing, denied the relief prayed for by complainants, and they prosecute this appeal to reverse that decree."

R. W. WALKER, and with him HUMES, SHEFFEY & SPEAKE, for appellants.

[Fargason & Co. v. Hall.]

Leaving out of view the payment in cash as a feature affecting the validity of the transaction, it may be considered as payment of existing debts by the transfer of property in discharge and satisfaction thereof. In considering the transaction in this light, the following propositions are to be kept in view: As between a grantee in a conveyance executed by an insolvent debtor, in payment and satisfaction of an antecedent debt, and an existing creditor who attacks the conveyance as fraudulent, the burden is on the grantee to show that the consideration of the conveyance to him was both *valuable and adequate.*—*Skipper v. Reeves,* 93 Ala. 332; *Sides v. Scharff,* 93 Ala. 106; *Mobile Savings Bank v. McDonnell,* 89 Ala. 434; *Roswald v. Hobbie,* 85 Ala. 73; *Wedgeworth v. Wedgeworth,* 84 Ala. 274; *Moog v. Farley,* 79 Ala. 246. When an insolvent debtor conveys property to one of his creditors in payment of an existing debt, the transaction is fraudulent as to his other creditors, if the property received by the preferred creditor is of a value materially greater than the amount of the debt, in payment of which it is taken. The value of the property must be no more than the fair equivalent of the sum of indebtedness which it discharges. The amount of indebtedness discharged must correspond with the fair and reasonable value of the property taken in payment.—*Bell v. Kendall,* 93 Ala. 489; *Mobile Savings Bank v. McDonnell,* 89 Ala. 434; *Lehman v. Greenhut,* 88 Ala. 478; *Knowles v. Street,* 87 Ala. 357; *Leinkauff v. Frenkle,* 80 Ala. 136; *Pritchett v. Pollock,* 82 Ala. 169. The limit of the creditor's right to obtain a preference is reached when he gets a sufficiency in value of the debtor's property to discharge his own debt. When he gets property worth more than the amount of his debt, the excess is so much taken from that which the other creditors have the right to subject to the payment of their demands. He gets more than the equivalent of the sum due him. In fact, his debt is more than paid. This is a diversion of so much of the debtor's property from the payment of his debts. The preferred creditor obtains an advantage beyond the satisfaction of his own demands. This is at the expense of the rights of other creditors. As to them it is a fraud which vitiates the entire transaction.—*Carter v. Coleman,* 82 Ala. 177; *Levy v. Williams,* 79 Ala. 171. Applying these propositions in the consideration of the evidence in this case, the impeached transaction must be declared fraudulent against complainants.

KIRK & ALMON, *contra.*—Hall, though insolvent, had the right to pay these respondents and his home debts in pref-

erence to any others.—*Moog v. Farley,* 79 Ala. 252; *Hubbard v. Allen,* 59 Ala. 283; *Bradley v. Ragsdale,* 64 Ala. 558; *Chipman & Co. v. Stern,* 89 Ala. 207. The property embraced in the sale was all the debtor owned, and the payment of $850 to him was less than his lawful exemption.—*Carter v. Coleman,* 84 Ala. 256; *Rankin & Co. v. Vandiver,* 78 Ala. 562. In estimating the value of the goods, some latitude must be allowed for difference of opinion.—89 Ala. 207; 89 Ala. 434. Hall had the right to sell his property and apply the proceeds in payment of his debts; and if the purchaser had a reasonable expectation that the money would be so applied, he is not chargeable with participation in any secret fraudulent intent of the debtor.—*Levy v. Williams,* 79 Ala. 179.

HARALSON, J.—There is no dispute between the parties as to the legal principles by which this case is to be decided. They have been so repeatedly declared by this court, as to require but little repetition of them here. There are three inquiries, and only three, to which consideration need be devoted, in a case of this kind, viz., the *bona fides* of the considertion paid, its sufficiency, and whether or not there was a reservation of benefits to the debtor.—*Pollock v. Meyer,* 96 Ala. 172; 11 So. Rep. 385; *Dawson v. Flash,* 97 Ala. 539; 12 So. Rep. 69.

There is no controversy as to the *bona fides* of the debts which respondents held against said Hall. It is clearly shown, and is not denied, that he owed the defendants, Throne, Franklin, Nance & Adams, the sum of $1,304, and to defendants J. S. Reeves & Co. $1,521.39; aggregating $2,825.39. Nor is it denied, for it is fully established by the proof, that the defendants together paid to Hall, as a part of the consideration of the trade, the sum of about $853 in cash—an amount of money which Hall was owing to other creditors for sums borrowed of them, which he felt special concern to pay. The proof tends to show, and is satisfactory to that end, that the representatives of the defendants—Nance and Neely—who conducted the negotiation, did not desire to purchase the notes and accounts, but simply the stock of goods, but that Hall would not make the sale, unless these were included; and yielding to his terms, they furnished him the amount of money he required to pay this indebtedness for borrowed money, the larger part of which was owing to his father and brother. Hall, who was examined by the complainants, swears to this fact, and also, that he paid every cent of the amount thus paid to him to these creditors; and he produced on the trial

their receipts to corroborate this statement. He says the complainants made no demand of him to pay these debts, but that he did require from them the money for the purpose; but Nance and Neely both swear he gave them the names of these creditors, and they paid the sum required with the understanding that it should be paid over to them, which Hall informed them afterwards he had done, and produced the receipts to show. Their version of the transaction is to be credited as the correct one, since it is natural, and what we might expect of them under the circumstances, having been advised by their counsel how to act. Hall had the right to pay these creditors, in preference to others, out of the proceeds of the sale of his property; and the purchasers will not be held to a fraudulent intent, in having paid to him this sum of money, as a part of the purchase price of the goods, if they paid it, and had a reasonable expectation, at the time, that it would be used for the purposes specified, and it was in fact so used.—*Chipman & Co. v. Stern*, 89 Ala. 207; *Levy v. Williams*, 79 Ala. 179; *Rankin v. Vandiver*, 78 Ala. 562; *Hodges v. Coleman*, 76 Ala. 103. It thus appears that the debts of the respondents, which were satisfied in the sale of the goods, notes and accounts, were *bona fide*, and that the money paid as the balance of the consideration for the purchase was honestly and fairly paid.

As to the value of the goods sold, and the notes and accounts transferred, there is conflict in the evidence. It would extend this opinion at too great length, and would be unnecessary, to review in detail the evidence of the witnesses as to these values. Referring first to the goods: the complainants, to prove their value, examined four witnesses, including the defendant, A. M. Hall, neither of whom, except Hall, showed a knowledge of the stock from an examination of it, or had experience which would entitle them to be considerd as very competent to speak in reference to such matters. But, with such experience and knowledge as they had, they gave it as their opinion that the goods were worth 75 cents on the dollar of their original cost. Hall says they were worth that price. On the cross-examination, he admitted that he had sold the stock for $3,000; that the transaction was fair and honest; that the times were hard, people poor, and money very scarce; that he was about a week negotiating the trade with defendant's representatives; that he had been in business since 1881, and the stock in store was composed, partly, of accumulations of goods since that time, but there were not a great many old goods; that he

had on hand five or six hundred dollars worth of new goods, and had many that had been carried from the winter before, and most of the summer goods had been brought over from the past summer; that there was a difference between him and the representatives of the defendants as to the value of the goods, notes and accounts; that they did not propose to pay exceeding $500 over and above the amount he owed them, but he demanded $800; that finally the sale was consumated, and the goods were valued in the transaction at $3,000, and the notes and accounts at $679.

On the other side, Nance and Neely, who made the negotiation with Hall, both depose that they paid more for the goods than they believed they were worth; that they had been selling to him for the past eight or nine years, and had sold him the greater part of the goods he had bought; that they had seen his stock several times a year, and had kept up with it; that the stock was old for the greater part, and was not worth exceeding $2,600, but that they offered him the amount of their debts—$2,825—and $500 for the goods, notes and accounts, but he declined the offer, and required $300 more; and trade was finally concluded, valuing the stock at $3,000, and the notes and accounts at $679.

Defendants examined seven other witnesses as to values, three of whom testified to many years experience in mercantile business, and to having examined this stock of goods; two of them giving it as their opinion, that it was not worth more than 50, and one that it was worth 60 per cent. on the cost price. The other four, who had had some experience with second-hand stocks of goods, testified that 50 per cent. on the cost price was a fair valuation of them. The stock, as inventoried by the receiver, at net cost, amounted to $4,276. If valued at 75 cents on the dollar, as estimated by complainants' witnesses, it was worth $3,200; and if at 50 cents, as estimated by other witnesses, then $2,100, making a difference in their estimates of $1,100. In proving the consideration of sale of this character, the law allows room for the ordinary difference of opinion, and will not weigh the estimates of values in too exacting a balance.—*Mobile Savings Bank v. McDonnell*, 89 Ala. 447.

But we have other evidence to aid us in the approximate value of the goods. The court appointed Amos L. Moody, the register in chancery, as the receiver in this suit, who took possession of the property transferred, and proceeded to sell the goods and collect the claims. The receiver's sales amounted to $3,617.75. He was about ten months in closing out the stock, a part of it at private sale, and some

[Fargason & Co. v. Hall.]

at auction. His expenses, which he swears were curtailed to what was absolutely necessary, amounted to $908.85, leaving as a balance, on that account, $2,708.90. But, before the receiver took charge, the defendants had sold $625.70 worth of goods, at a cost of $115.08, and had added $55.00 worth of new goods, which the receiver got, together amounting to $170.08, to be deducted from the gross sales; leaving a balance of $455.62, to be added to the $2,708.90, making $3,164.52, as the approximate value of the goods at the time they were sold to the defendants, being $164.52 more than defendants paid for them. Under the circumstances, we can not regard $3,000 paid for $3,164.52 worth of goods, as so materially less than their value as to make the sale fraudulent, especially when it is remembered, that for the ten months between the sale by the defendants and the closing out of the receivership, the interest on the amount the defendant paid for the goods exceeded this difference of $164.52, and that the interest is still running against them, and none in their favor, on the sum remaining in the hands of the register. But, in addition to this, it is clearly shown that Hall transferred every thing he owned, without the reservation of any exemptions; and if the amount paid in cash was less than the exemptions to which he was entitled, the other creditors can not complain of the transaction, since they are not injured by it.—*Brinson v. Edwards*, 94 Ala. 448.

For convenience, we consider the transaction of the notes and accounts separate from the sale of goods, although they were one and the same. These were estimated, and included, at $679. After an effort, extending over nearly two years, the receiver collected on these claims $519.75, and James Nance collected, before the receiver was appointed, $284.62; making total collections, $804.37. Deducting 15 per cent., the reasonable expense, as shown, of collecting, and we have remaining $4.72 more than was paid for them. Green Turner, who was employed by the receiver to collect these claims, or to aid in so doing, who was acquainted with the financial standing of the parties, gives his opinion that the batch was not worth over $650 when sold; and Amos L. Moody, who was also well acquainted with the parties owing the notes and accounts, agrees with said Turner, that not more than $40 or $50 more can be collected; that the parties are poor, and, for the most part, nothing can be made out of them. The evidence is satisfying, without reviewing it, that the defendants paid fair value for these claims.

[Germolgez v. The State.]

It is not insisted that there was any reservation of benefit to Hall in making the sale. Hall himself swears: "In this transaction, I did not receive any personal benefit, other than the payment of my indebtedness. I did not retain a nickel. . . . I honestly owed the amounts I paid. . . These payments were made according to my design at the time I made the demand for the $800." Speaking of the entire transaction, he says: "The sale of the goods, notes and accounts, was not made to hinder, delay or defraud any of my creditors, neither was it made to hinder, delay or defraud J. T. Fargason & Co. I honestly owed the parties the amounts I have stated; $1,521.39 to J. S. Reeves & Co., and $1,304 to Throne, Franklin, Nance & Adams."

We find no error in the record, and the decree of the chancellor is affirmed. ·