F. J. BROWN, Assignee, Appellant, v. F. C. BRADFORD, Receiver of the Buena Vista State Bank, THE BUENA VISTA STATE BANK, JOHN R. LEMON, J. ROYAL LEMON, JOHN K. LEMON, E. B. WALKER, JOHN ALDINGER, S. W. HOBBS, and GUILFORD, MARTIN & Co.

**Banks:** CONVEYANCES TO. Plaintiff's assignor made a transfer of land to a bank in which he was the principal stockholder. The resolution of the directors accepting the grant recited that the transfer was made to cover a shortage in the capital stock, that the grantor should receive pay for the land from the future undivided profits of the bank, and that he might retain possession, and receive the rents; and provided for a re-conveyance at his request at any time before payment. *Held*, that as to the bank and its depositors the conveyance was absolute, but as to the stockholders, it was a loan which they agreed to pay from the undivided profits of the bank.

SAME. The acceptance by a state bank of a conveyance of real property to make good an impairment of its capital stock, is not *ultra vires*, although the bank under ordinary circumstances has no authority to purchase real estate except such as may be convenient or needed for use in its business.

POWERS. Directors of a bank have no authority to pledge the future earnings, in the absence of express authority from the stockholders.

FRAUDULENT CONVEYANCE. A conveyance absolute on its face is not fraudulent in law because of a secret trust rendering it a mortgage, where no fraud was intended, and none of the grantor's creditors were in fact misled.

SAME. An assignee for creditors is not entitled to judgment against a receiver of a bank for the purchase price of property conveyed by the assignor to the bank for the purpose of making good an impairment of its capital stock, under an agreement that he should be paid out of the undivided profits of the land, where there are no special profits, notwithstanding that a release by the assignor of the agreement for payment is set aside at the instance of the assignee, as fraudulent.

*Recording.* A conveyance absolute on its face is not fraudulent in law because of a secret trust, where such trust does not enter into the consideration for the deed. The mere non-recording of deeds does not render them fraudulent in law as to creditors, where no fraud was intended, and no one was misled.

*Badges.* That a transaction which was in fact a mortgage was put in the form of a conveyance absolute on its face, while a badge of fraud as to creditors of the mortgagor, is not conclusive as to fraud.

Sales: VENDOR'S LIENS. A deed absolute on its face was made to a bank by an officer thereof to cover an impairment of the capital stock, with a collateral agreement for payment of the price out of future profits of the bank. This agreement was released upon the promise of the bank examiner that the management of the bank would not be interfered with. Through the bank examiner, a receiver was subsequently appointed for the bank. *Held*, that, as the payment was to be made from a particular fund the grantor could not have a lien established on the land for the price.

*Appeal from Buena Vista District Court.*—HON. LOT THOMAS, Judge.

THURSDAY, OCTOBER 21, 1897.

SUIT in equity to set aside a conveyance of certain land made by one John R. Lemon, plaintiff's assignor, to the Buena Vista State Bank, and to annul the transfer between the same parties of certain property known as "Auxiliary Savings Banks." It is claimed that the conveyance and transfer were void because the bank had no authority to receive deeds of real estate, because

the deed was never delivered, and because made with
intent to hinder, delay, and defraud the creditors of
John R. Lemon. The defendant Bradford, receiver,
pleaded that the conveyance and transfer were made
to meet an impairment of the capital of the Buena Vista
Bank, and denies fraud in the transaction. The trial
court dismissed plaintiff's petition, and he appeals.—
*Affirmed.*

*F. J. Brown, James De Land,* and *J. E. Buland* for
appellant. .

*F. H. Helsell* for appellees.

DEEMER, J. — Prior to March 1, 1893, John R.
Lemon, one of the defendants in this case, was engaged
in business as a private banker in the town of Storm
Lake. On that date he, with others, who were relatives
or close friends, organized and incorporated an institu-
tion known as the Buena Vista State Bank. The capital
stock of this bank was fixed at five hundred shares, of
the par value of one hundred dollars each. John R.
Lemon took three hundred and twenty of these shares
in exchange for the building and fixtures, in which he
had theretofore been doing business, at an agreed val-
uation of twenty-five thousand dollars. The auditor of
state, through his officers, made an examination of the
bank in June, 1894, and, after looking over its assets
and liabilities, claimed there was, or had been, an
impairment of the capital stock, which must be made
good. John R. Lemon thereupon, and on the twenty-
sixth day of June, 1894, executed and delivered to the
bank deeds for eight hundred acres of land situated in
Dakota, Iowa, Nebraska, and also transferred to said
bank what is known as "200 Burns & Barclay Auxiliary
Savings Banks" for five hundred dollars. For reasons
to be hereafter explained, these deeds were not recorded

until August and September of the year 1895. On the twenty-fifth day of June, 1894, the board of directors of the bank, without the knowledge or consent of the state authorities, adopted a resolution, of which the following are material parts: "Whereas, the Iowa bank examiner at the last examination of this bank appraised the real estate at fifteen thousand dollars, and the personal property, including furniture and fixtures, at two thousand dollars, thus making a deficit of seventy-four hundred and six dollars and fifty-nine cents in the former and five hundred and ninety-three dollars and forty-one cents in the latter, a total deficit of eight thousand dollars in the capital of the Buena Vista State Bank; and whereas, John R. Lemon proposes to make good this deficit by contribution of real estate and other property, and agrees to take his pay for the same from and out of the undivided profits of the bank in amount not to exceed four thousand dollars in any one year until all is paid, and for this purpose proposes to sell to this bank the following described real estate at the price below named, to-wit, *   *   *   also two hundred Burns & Barclay Auxiliary Savings Banks for five hundred dollars; it being agreed and understood that at any time before the said Lemon receives pay for the above property the bank will re-convey it to him, or any part of it, at the aforesaid prices, upon his request in writing, the amount to be indorsed on the amount then due him for the same; and upon the request of the cashier in writing the said Lemon will re-purchase any part of the aforesaid land at the prices above named, and to indorse the amount of the same upon the amount due said Lemon. It is also stipulated that the said Lemon shall have the use of said land as compensation for the amount contributed by him as above until the same shall be paid out of the undivided profits as above stated. Resolved, that the

Buena Vista State Bank accepts the above proposition of the said John R. Lemon, and upon the delivery of the proper deeds of conveyance the cashier is authorized and directed to execute a contract with John R. Lemon in compliance with the above." Pursuant to this resolution, the following contract was entered into between the parties whose names are attached: "This agreement, made and entered into this 26th day of June, 1894, between the Buena Vista State Bank, party of the first part, and John R. Lemon, party of the second part, both of Buena Vista county, Iowa, witnesseth: That in consideration of $8,000, contributed by said John R. Lemon to the capital of said bank, in compliance with the action of the directors at a meeting held on the 25th day of June, 1894, the Buena Vista State Bank agrees to pay to said John R. Lemon, his heirs or assigns, the aforesaid sum of $8,000, the same to be paid out of the undivided profits of the bank, but in amount not exceeding $4,000 in any one year; this agreement to bind the heirs and assigns of the parties herein represented. Witness our hands the day and year first above written. Buena Vista State Bank, by J. K. Lemon, Cashier. John R. Lemon." The bank examiner, when he discovered the resolution passed by the board of directors, and the contract based thereon, insisted upon the surrender of this contract, to which Lemon finally consented; and on the twenty-ninth day of August, 1895, Lemon wrote across the face of it, "Surrendered and canceled, Aug. 29, 1895." The following release also appears in the book of minutes of the bank and upon the contract: "August 29th, 1895. For the purpose of making good a part of the impairment of the capital stock of the Buena Vista State Bank in accordance with the original intention, I hereby surrender this contract, and all my interest, including the right of occupancy and rents in and to the property deeded

by me to said bank on or about the date of the above contract, acknowledging that such transfer was an absolute conveyance. [Signed] John R. Lemon." Notwithstanding this release, the state authorities were convinced that the bank was not able to longer continue business, and an action was brought on the thirtieth day of August, 1895, by the attorney general, to close up its affairs. In this action F. C. Bradford was appointed receiver, and as such took possession of the real estate in controversy. Thereafter, and on the second day of September following, John R. Lemon made a deed of general assignment of all his property for the benefit of creditors, in which he named F. J. Brown assignee. Brown qualified as such assignee, and thereafter brought this suit to set aside the conveyances and transfers heretofore referred to, upon the grounds: (1) That the transactions were *ultra vires,* and beyond the power of the bank; (2) that the conveyances were void, because made with intent to hinder, delay, and defraud creditors, void because of a secret trust reserved to John R. Lemon, and void because the deeds were withheld from the records by agreement between the parties. The assignee also asked as alternative relief that, if the conveyances be not set aside, that the contract of release made by Lemon be set aside and the original agreement made between him and the bank be restored.

I.   Appellant's first point is that a state bank has no authority to purchase real estate except such as may be convenient or needed for use in its business, and that the transfer in question amounted to a purchase with an agreement to re-sell. We are not called upon to determine this question, for we do not regard these transactions as a sale to the bank, as that term is ordinarily used. The resolution adopted by the bank under date of June 25, 1894, discloses that the bank examiner found a deficit of eight thousand dollars in the capital of the bank, and

that John R. Lemon proposed to make this good by the transfer of the land and the auxiliary savings banks stock, upon condition, however, that he should receive pay for the same out of the undivided profits of the bank, as shown in said resolution. Whether this impairment was due to an overvaluation of the real estate given by Lemon in exchange for his stock does not clearly appear, although this is a fair inference from the transaction. But, whether this be true or not, Lemon, as one of the stockholders, made the conveyance and transfer for the purpose of securing this impairment; and it does not lie in his mouth, nor in that of his representative, to say that this was not the proper way to secure it. The transaction was an executed one, voluntarily entered into and accepted and relied upon by the bank; and it is not material that the statutes (chapter 29, Acts Twenty-fifth General Assembly) provide another manner by which this impairment shall be met. It was met in another manner, and presumably because John R. Lemon felt himself under obligations to so meet it. The agreement entered into on June 26, a copy of which we have heretofore set out, is a release of the future unearned profits of the bank pledged to Lemon to reimburse him for the transfers. In other words, the bank undertook to direct its earnings to the extent of not exceeding four thousand dollars a year to the reimbursement of Lemon for his transfers. Whether it had authority to do this is a mooted question. Conceding, for the purposes of the case, however, that it had such authority, yet it appears that this contract was surrendered, canceled, and released by Lemon on August 29, 1895, by the release of that date, heretofore set out. In this release Lemon says that it was the original intention to make good the impairment of the capital stock by the conveyances before referred to, and he acknowledged that such

transfers were absolute conveyances. Viewed from our present standpoint it is the same as if the conveyances had been made by him on August 29, 1895, for the purpose of making good the deficiency in the capital stock. What reason is there for saying that such conveyances were void? It is not a case where the bank goes into an open market and deals in real estate. Such a transaction might be *ultra vires*. On the contrary, the convey ances were made for the purpose of securing the depositors and creditors of the bank against loss growing out of a diminution of the capital stock; a loss for which Lemon acknowledged his responsibility by making the conveyances. That a bank may take real estate security for any debt due, is conceded. See Boone, Banking, section 23, and cases cited. Such a transaction is not *ultra vires;* and if it were, strictly speaking, without authority of the bank, we doubt whether Lemon or his representatives could take advantage of it. The conveyance, as between Lemon and the bank, or as between Lemon's assignee and the receiver of the bank, was good, unless it was made with intent to defraud. There is no evidence whatever that either the conveyances or the release of date August 29, 1895, were made with intent to defraud creditors of John R. Lemon. While he may have been, and doubtless was, insolvent on the last named date, yet neither the state officials nor the other officers of the bank knew anything of his insolvency. The conveyances and release were made at the suggestion of the state auditor and bank examiner for the laudable purpose of securing the creditors and depositors of the bank, and without any purpose or intent of wronging or delaying other creditors.

It is said the conveyances were void, because of a secret trust reserved in Lemon by the contract of date

June 26, 1894, and because Lemon was permitted to receive the rents and profits of the land after the conveyances were made. The agreement was to return to Lemon, from the undivided and unearned profits of the bank, the sum of eight thousand dollars. This, in effect, was a loan made by Lemon to the stockholders of the bank, which they agreed to repay from future profits of the institution. As to the bank and its depositors the conveyance was absolute, and for their benefit; but as to the stockholders and directors it was a loan which they agreed to repay from their undivided future earnings. The agreement as to possession was made of record upon the bank minutes, and possession was in fact retained by Lemon. The deeds were not recorded, as we have said, until the latter part of August or the first of September, 1895. No creditor of Lemon's was, in fact, misled by these transactions. Again, the whole transaction is between Lemon and the bank, as it originally stood, was, in effect, a mortgage of the property to the bank to secure the sum of eight thousand dollars. True, conveyances absolute on their face were made; but such fact, while a badge of fraud, is not conclusive. *Fuller v. Griffith*, 91 Iowa, 632. We find affirmatively that no fraud was, in fact, intended, and, as none of Lemon's individual creditors were misled thereby, the conveyances were not fraudulent. Moreover, it does not appear that the right to the rents or the privilege of re-purchase was a part of the consideration for the conveyances, as in the case of *Macomber v. Peck*, 39 Iowa, 351, and other authorities cited by appellant. There was a consideration for the transfer of the property, and the use of the same by Lemon was of benefit, rather than of disadvantage, to his creditors. The transaction, on the face of it, as it appears from the deeds and records of the corporation, was in sooth a mortgage until the agreement of release of August 29, 1895; and under the

statutes of this state a mortgagor of real estate is entitled to the possession and to the rents and profits. Code 1873, section 1938. See, also, *Suiter v. Turner*, 10 Iowa, 517. Now, as the conveyance was not made absolute in form for the purpose of defrauding creditors, it will be given force and validity, and treated as a mortgage until the execution of the agreement of release of date August 29, 1895. At that time the conveyance became absolute, and Lemon relinquished all rights to the possession of the land, without fraud or purpose on his part of hinder or delay his creditors. There is, as we have said, no evidence that anyone was, in fact, misled on account of the form of the transaction; and no reason is offered why the assignee should be allowed to set aside the various transfers and agreements made by his assignor. While the deeds were not recorded until August and September of the year 1895, yet this did not result from any agreement between the parties. Delivery was made of them to the bank, and mere inadvertence is responsible for their not being recorded. This does not render them fraudulent. *In re Bloomfield Woolen Mills*, 101 Iowa, 181.

Appellant further contends that the consideration for the release of date August 29 was an agreement on the part of the bank examiner that the management of the bank should not be interfered with; that this officer disregarded his agreement, and proceeded to have a receiver appointed for the bank; and that by reason thereof the consideration for the release has failed, and that he is entitled to have the conveyances set aside, or a lien established upon the premises for the purchase price, to-wit, eight thousand dollars. There are two answers to this proposition. *First*, we do not think he has established the agreement said to have been made by the examiner. We are of opinion that the examiner made no such promise, and that the release was executed because of a statement from that

officer that the impairment in capital stock must be made good, and that the only feasible way to do it was to execute the release. But if we should assume that such promise was made, and that for this reason it should be set aside, plaintiff is not entitled to judgment for the purchase price, for this was payable out of a particular fund, to-wit, the earnings of the bank. Neither the bank nor any other person or corporation promised to pay eight thousand for the land and auxiliary savings banks stock. The transaction before the release was, as we have said, a loan or mortgage to the bank or to the stockholders to meet a deficit in the capital, and was to be paid from the future earnings of the bank. If there was or is any liability to Lemon, it is from the individual stockholders. But, as the officers and directors had no authority as such to pledge the future dividends, for such purposes, without the consent of the stockholders, it is likely there is no liability on their part. It must be borne in mind that these conveyances were dictated by the state officials who were vested with authority to examine, and, to a certain extent, direct, the management of state banks; and that officers and directors of the bank, in accepting these conveyances, were acting as trustees for the depositors as well as other creditors; and it may well be doubted whether their resolution of date June 25, 1894, and the agreement were of any validity. They certainly had no authority to pledge the future earnings of the bank in the absence of express authority from the stockholders. And without deciding the question we may say that we much doubt whether fraud committed by them upon the creditors of John R. Lemon in accepting the conveyances, even if it had been shown, would have been chargeable upon the depositors, or upon the receiver, who represented them.

Some other questions are presented, which are not regarded of controlling importance, and need not be considered. The decree of the district court is equitable and just, and it is AFFIRMED.