A. E. EDDY, *et al.*, Appellants, v. OTHA WEARIN, Appel-
lee, and MARY M. JOHNSON, Administratrix, *et al.*,
Appellants v. OTHA WEARIN, *et al.*, Appellees.

**Fraudulent Conveyance:** SECRET RESERVATIONS. A conveyance of
land for a full and adequate consideration will not be set aside as
fraudulent to the grantor's creditors because the grantees agreed
orally that the grantor should have certain growing crops to feed
some cattle belonging to him which were not conveyed, where
such crops had been previously mortgaged, part of them were
raised by others under contract by which they were to receive a
specific price per bushel for their labor, and another part was
grown under a lease by which the grantor was to have only one-
third of the crops as rental, and all reservation, so far as it was
secret, was for the benefit of the grantor's creditors.

SAME   A conveyance of land will not be set aside as fraudulent to the
grantor's creditors because of an independent agreement not in
consideration of the deed, by the grantees, for a life lease of the
land to the grantor, which agreement was never carried out.

*Appeal from Mills District Court.*—HON. WALTER I.
SMITH, Judge.

FRIDAY, MAY 13, 1898.

CREDITORS' bills to subject certain real estate, the
legal title to which is in the name of Otha and Andrew
Wearin, to the payment of judgments against Harry
Wearin. The trial court dismissed the plaintiffs' peti-
tions, and they appeal.—*Affirmed.*

*John Y. Stone, W. S. Lewis, N. M. Pusey, E. B.
Woodruff* and *C. E. Dean* for appellants.

*Smith McPherson* and *L. T. Genung* for appellees.

DEEMER, C. J.—Prior to the seventh day of August,
1893, Harry Wearin was the owner of one thousand and

eighty acres of land in Mills county. The land was heavily incumbered, and Wearin was largely in. debt. On that day he conveyed seven hundred and sixty acres of this land to his brother, Otha Wearin, and one hundred and sixty acres to Andrew Wearin, another brother. These suits are to set aside these conveyances, and to subject the land to the payment of certain judgments held by appellants. The conveyances are said to be fraudulent because the grantor intended thereby to hinder, delay, and defraud his creditors, which intent was known to and participated in by the grantees; because the grantor made a secret reservation of the growing crops, which on the face of the deeds passed to the grantees; and because of a secret life lease reserved to the grantor of two hundred and forty acres of the land conveyed. Claim is made that, notwithstanding there was full and adequate consideration for each of these conveyances, they were made with intent on the part of the grantor to hinder and delay his creditors, and that this intent was known to and participated in by the grantees. This contention presents purely an issue of fact, which we have carefully considered in the light of the record presented, with the result that we fail to find that evidence of actual fraud which will justify us in setting the conveyances aside. A review of the evidence would be without profit, and we content ourselves with stating ultimate conclusion only. At the time the conveyances were made there was a crop of corn growing upon part of the land covered by each deed. This crop was not reserved in either conveyance. Appellants argue that it was secretly reserved to the grantor, and that this is conclusive evidence of an intent to defraud. The evidence shows that there was some talk about the crop growing upon the land, and that the grantees finally

agreed that Harry Wearin should, as between them (the parties to the deed), have it to feed some cattle, which were not conveyed. If this were all, there might be some ground for claiming that there was a secret reservation in the grantor which would affect the integrity of the conveyance. But we find, from an examination of the record, that the grantor had previously mortgaged this crop to certain of his creditors; that part of it was raised by others under contract by which they were to receive fifteen cents per bushel for their labor; that the grantor borrowed money with which to pay part of this claim, secured by a mortgage upon the crop; and that still another part was grown under a lease by the terms of which the grantor was to have but a third of the crop produced, as rental for the land. From this it will be seen that all that part of the growing crop in which the grantor had an interest had been constructively severed from the soil by the making of the chattel mortgage before the conveyances in question were made; and it is also clear that that part of the crop not owned by the grantor did not pass, and there was no occasion for reserving it in the conveyances. Moreover, the evidence shows that the reservation, if any, was for the benefit of Harry Wearin's creditors. The corn was to be fed to cattle which he then owned, and which, although they were covered by a large mortgage, all parties expected would double in value, and thus afford the grantor more means with which to pay his debts. The crops were not subject to levy at the time the conveyances were made. *Ellithorpe v. Reidesil,* 71 Iowa, 315. And their reservation, under the facts of this case, was not such evidence of fraud as should defeat the conveyances of the land.

Again, it is urged that there was a secret reservation of a life lease in two hundred and forty acres of the

land, to Harry Wearin, which was a part of the consideration for the land, and that this reservation is conclusive evidence of fraud. The record shows that at the time of the making of these conveyances the grantor and grantees agreed upon a lease of part of the land to the grantor and his sons for the sum of three dollars and thirty cents per acre cash rent. These leases were never consummated, however, for the reason that the grantor lost all his horses and other property, and was unable to pay the rent of, or farm the lands. It does not appear that these leases constituted any part of the consideration for the conveyances. On the contrary, they were to be based upon an independent and agreed compensation of three dollars and thirty cents per acre. These estates were not secretly reserved from that granted, but were new and independent titles or tenancies, to be created in the future, upon a new and distinct consideration. Now, while it is no doubt true that a secret reservation between the vendor and vendee will render a conveyance fraudulent in law, irrespective of the intention with which it was executed, as is illustrated in the cases of *Macomber v. Peck*, 39 Iowa, 354, and *Dean v. Skinner*, 42 Iowa, 418, yet where, as in this case, there was no secret reservation of the use of the land in part consideration for conveyance, but an independent contract or agreement to lease based upon a new consideration, the rule does not apply. *Stroff v. Swafford*, 81 Iowa, 695; *Brown v. Bradford*, 103 Iowa, 378. The evidence is not sufficient to establish fraud in fact. Indeed, the contrary clearly appears, and, before we are justified in holding the conveyances fraudulent in law, the facts should be such as to bring the case clearly within the rules. No such showing is made. Indeed, we are quite strongly impressed with the good faith of the entire transaction. The decree of the district court is AFFIRMED,