E. R. SLY, Appellant, v. HENRY BELL.

**Fraudulent conveyances.** The creditor of an insolvent debtor may, with knowledge of the insolvency and a fraudulent purpose of the debtor, purchase of him sufficient property to satisfy his claim and may pay the debtor a cash difference if necessary; but, where property equal in value of the claim might have been secured, the purchase of an additional amount and payment therefor with knowledge of the debtor's wrongful intent will render the whole transaction fraudulent at the suit of other creditors.

*Appeal from Crawford District Court.*— HON. Z. A. CHURCH, Judge.

TUESDAY, JULY 10, 1906.

ACTION in replevin, verdict and judgment for the defendant. The plaintiff appeals.— *Affirmed.*

*Shaw, Sims & Kuehnle,* for appellant.

*F. C. Gilcrest,* for appellee.

LADD, J.— The defendant, as sheriff of Crawford county, levied an execution May 23, 1903, on eight head of cattle, a wagon, and two sets of harness, as the property of M. F. Sly, who, with Ella H. Sly, his wife, had confessed judgment in favor of W. and J. G. Hinn for $2,376 March

13th previous. The property was sold and proceeds applied on the judgment. Before doing so, however, defendant exacted an indemnifying bond, thereby waiving notice of plaintiff's claim of ownership by virtue of a bill of sale, covering this and other property, executed by M. F. Sly to his brother, the plaintiff, February 25, 1903, and in this action the latter prayed judgment for the value of the property taken and sold. ‑ The defense interposed was that the purpose of the bill of sale was to hinder, delay, or defraud the creditors of the judgment debtor. The evidence showed that one-half of the indebtedness fell 'due March 1, 1903, but that prior thereto, and on February 21st, M. F. Sly and his wife conveyed the farm on which they resided to plaintiff, and four days later M. F. Sly alone executed to him a bill of sale covering all his personal property except household furniture; that the agreed consideration for the land was an assumption of a mortgage thereon of $3,600 and the application of $1,200 on a note executed by M. F. Sly to plaintiff for $960 dated March 27, 1885, payable in one year, and that for the personal property was $1,000, of which $275 was paid in cash and the remainder applied in a satisfaction of the note.

Appellant complains of several instructions, but, in view of our conclusion that the evidence of fraud was conclusive, these need not be considered. The judgment defendant candidly admitted that his purpose in executing the bill of sale was to hinder and delay, if not to defeat, the collection of the indebtedness owing W. and J. G. Hinn. This was made known to the plaintiff, and he fully understood the object sought to be attained. If, notwithstanding this, he had taken the property at a fair price in satisfaction of his claim against his brother without paying in cash more than was reasonably necessary to effect the collection of the indebtedness owing him, and therein had acted in good faith, the transaction must have been upheld. *Thompson v. Zuckmayer* (Iowa) (not officially reported) 94 N. W. 477; *Stroff*

*v. Swafford Bros.,* 81 Iowa, 699; *Rosenheim v. Flanders,* 114 Iowa, 293.

But, while a vigilant creditor may procure payment of his claim against a failing or insolvent debtor by a purchase of his property, he must not go beyond the permissible purpose of securing his own demand. The whole purpose of the creditor must be the payment of the debt. He will not be allowed to go beyond this and confer a benefit on the debtor: This is the boundary of the reward and protection the law gives to the vigilant creditor. In effecting this purpose he must not unnecessarily hinder or delay other creditors, or impair their rights, by placing it in the power of the debtor to screen a part of the proceeds; the creditor having knowledge thereof or of facts sufficient to create reasonable belief that such is his intention. When, therefore, a creditor purchases property from his debtor, a part of the consideration being the payment of an antecedent debt and a part money paid, the rules applicable are the same as to purchasers on a new consideration; the payment of a just debt being a circumstance to be considered as bearing on the *bona fides* of the transaction. If, however, the payment of money in part has been reasonably necessary in order to effect the collection of the debt, this will not invalidate the transaction. The rule is thus stated in Bump on Fraudulent Conveyances 194: "Although the purchase exceeds the amount of the indebtedness, still, if the excess is reasonably necessary for attaining the lawful purpose of satisfying the actual debt, the purchase to the whole extent may be attributed to the same motive of self-interest, and therefore the mere fact of the excess does not invalidate the transaction, unless there are other circumstances tending to show a fraudulent intent on the part of the purchaser." This necessity is not created by the unyielding demand of the debtor for cash, but must arise from the nature, condition, or situation of the property. Thus, in *Levy & Co. v. Williams,* 79 Ala. 171, the debtor insisted that the creditor buy three

tracts of land when one would have satisfied the indebtedness, and the court held the necessity was not thereby shown, but that, on the contrary, this advised the creditor that the object of the sale was not the payment of an honest debt but the conversion of real estate into money because money was "more easily shuffled out of sight than land," and the payment of the debt was merely a means to accomplish that object. See, also, *Maddox v. Reynolds,* 69 Ark. 541 (64 S. W. 266). An insolvent debtor cannot be denied the right to dispose of his property, but the design in so doing must be the appropriation of all the proceeds to the satisfaction of his debts, and, if the creditor who purchases his property acts upon the reasonable expectation that they will be so applied, he is not chargeable with participation in the secret fraudulent intent of the debtor. These principles are fully established by the authorities. *Rankin v. Vandiver,* 78 Ala. 562; *Fargerson v. Hall,* 99 Ala. 209 (13 South. 302); *Mc-Veagh v. Baxter,* 82 Mo. 518; *Leinkauff v. Frenkle,* 80 Ala. 137; *Young v. Stallings,* 5 B. Mon. (Ky.) 307; *McDonald v. Gaunt,* 30 Kan. 693 (2 Pac. 871); *Oppenheimer v. Guckenheimer,* 39 Fla. 617 (23 South. 9); *Carl & Tobey Co. v. Beal & Fletcher Grocery Co.,* 64 Ark. 373 (42 S. W. 665); *Henney Buggy Co. v. Ashenfelter,* 60 Neb. 1 (82 N. W. 118, 83 Am. St. Rep. 503). See 20 Cyc. 478, for collection of authorities.

In the case at bar, the judgment defendant was insolvent. The bill of sale and deed conveyed to his brother, the plaintiff, all his property. After applying the difference between the mortgage on the land assumed by plaintiff and the price agreed on the note, there remained $725 unpaid. They then agreed upon $1,000 as the price of the personal property included in the bill of sale, described as follows: "One (1) thoroughbred Hereford bull (Reputation). One (1) thoroughbred Hereford cow (Mabel) and increase. Five (5) grade Hereford cows and increase. Two (2) grade Hereford yearling heifers and increase. Two (2) grade

Hereford bull calves. One (1) gray gelding. One (1) bay gelding. One (1) dun colored mare. Ten (10) head of hogs and increase. Two (2) lumber wagons. One feed grinder. Three (3) sets of harness. One Case plow. One iron harrow." The balance of $275 was paid in cash. It is too manifest for argument that this payment was unnecessary for the collection of the indebtedness. Items in value to this amount might readily have been omitted. None of them are shown to have been exempt, though M. F. Sly was allowed by the sheriff to select two cows, two calves, and a team, at the time of the levy of execution without otherwise claiming to own them. This was several months after the execution of the bill of sale, and whether the stock so selected was included therein, or was then exempt, does not appear. The presumption, in the absence of evidence to the contrary, is that property is not exempt. Moreover, this matter does not appear to have entered into the negotiations of these parties. The transfer was entirely without reference to exemptions and the money was paid with the understanding that the sale was being made to hinder and delay creditors in the collection of their claims. The payment of money without the necessity of so doing in connection with the antecedent indebtedness, with knowledge of M. Sly's design to hinder and delay his creditors by effecting the sale, amounted to participation in his unlawful purpose precisely as though the entire consideration had been new and rendered the entire transaction fraudulent. *Rosenheim v. Flanders,* 114 Iowa, 291. It follows that, as the verdict for defendant might have been directed, the errors, if any, in the instructions, were without prejudice.— *Affirmed.*